# CASES

### ARGUED AND DETERMINED

#### IN THE

# SUPREME COURT OF ILLINOIS.

---

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. JOHN CONNERS, Plaintiff in Error.

*Opinion filed June 29, 1910—Rehearing denied October 6, 1910.*

1. CRIMINAL LAW—*verdict should stand unless palpably against the weight of evidence.* Whether the evidence in a criminal case is sufficient to warrant a verdict of guilty is in the first instance a question for the jury, and the verdict will not be set aside as unauthorized by the facts unless it is so palpably against the weight of evidence as to indicate it was based on passion or prejudice.

2. SAME—*what evidence warrants a conviction for mayhem.* Where four witnesses for the People testify to the presence and participation of the defendants in the assault upon the complaining witness, which resulted in the loss of his ear, and three witnesses for the defendants testify that the defendants were not present at the time of the assault but that the assault was committed by an unknown stranger, the jury are not unwarranted in finding a verdict of guilty.

3. SAME—*question of irregularity in drawing jury can only be raised by challenge to array.* A challenge to the array is the only manner in which the question of irregularity in drawing the jury can be presented to the Supreme Court for decision, as a defendant cannot sit by and accept the jury without objection and after an adverse verdict seek to have the verdict set aside for some irregularity which existed at the time the jurors were accepted.

4. SAME—*when newly discovered evidence is not ground for a new trial.* Alleged newly discovered evidence having some tendency to impeach certain statements of witnesses for the People, but which is not of any such conclusive character as would prob-

ably have changed the result of the trial, is not ground for set-
ting aside the verdict and granting a new trial.

5. SAME—*what is not such an improper remark as justifies re-
versal.* A statement by the prosecuting attorney to the jury in a
mayhem case, to the effect that they do not send a man to the peni-
tentiary but merely indicate what the punishment shall be, and
that if they thought it should be a penitentiary sentence they might
so indicate but that the time was fixed by law, and that if a man
is sent to the penitentiary he is subject to parole after he has been
there a year, is not ground for reversal, as having a tendency to
lead the jury to think the maximum punishment for mayhem was
one year. (*Farrell* v. *People,* 133 Ill. 244, distinguished.)

6. SAME—*when instruction as to evidence of alibi is not harm-
ful.* An instruction stating that when the jury have considered
all the evidence, as well "that touching the question of *alibi* as the
incriminating evidence," then, if they have any reasonable doubt
of guilt, they should acquit, is not harmful, as tending to restrict
the consideration of the defendant's evidence to that of an *alibi,*
only, where the defendant's evidence does not tend to prove any
other defense than that the accused was not present at the com-
mission of the crime, which both parties treated as presenting the
defense of an *alibi.*

7. APPEALS AND ERRORS—*a party should copy in his brief the
whole of the instruction complained of.* A party who complains
of an instruction should, in copying it in his brief, copy the whole
instruction, and not merely the portion of which he complains.

WRIT OF ERROR to the Criminal Court of Cook county;
the Hon. WILLARD M. McEWEN, Judge, presiding.

DANIEL L. CRUICE, A. S. LANGILLE, and O. J. C.
WRAY, for plaintiff in error.

W. H. STEAD, Attorney General, JOHN E. W. WAY-
MAN, State's Attorney, and ROY WRIGHT, (JEREMIAH SUL-
LIVAN, of counsel,) for the People.

, Mr. CHIEF JUSTICE VICKERS delivered the opinion of
the court:

Edward Donovan, William O'Connor, John Conners,
Joseph Malloy and Thomas McDonald were jointly in-
dicted by the grand jury of Cook county for the offense

of mayhem upon the person of Charles Smith by tearing or cutting off the ear of the prosecuting witness. The defendants were all tried together, and the jury returned a verdict finding John Conners and Edward Donovan guilty as charged in the indictment and fixing the punishment of each at imprisonment in the penitentiary. The other defendants were found not guilty. After overruling a motion for a new trial and in arrest of judgment the court pronounced sentence upon Conners and Donovan in accordance with the verdict. John Conners alone has sued out a writ of error from this court and assigns numerous errors upon the record.

It is first contended by plaintiff in error that the court erred in not granting a new trial because the evidence is not sufficient to sustain a conviction. The evidence on behalf of the State shows that on September 6, 1909, at about the hour of nine o'clock in the evening, the prosecuting witness, in company with a friend by the name of Mike Cyrulik, left a boat called the *C. W. Watson,* upon which they were employed, and together they visited a number of saloons in South Chicago, in which they took several drinks. About eleven o'clock in the evening they went into the saloon at 9390 Ewing avenue, which was known as Cannavan's saloon. At Cannavan's they had one or more drinks of beer and then engaged in a game of pool with some men who were unknown to them. The evidence shows that some controversy came up as to which man should pay for the drinks. This dispute was finally settled by Cyrulik paying for the drinks. There was also some animated argument in reference to the speaking of the Spanish language, in which plaintiff in error criticised Smith's Spanish and told him that his Spanish was more like Mexican than anything else. There was nothing said by Smith or Cyrulik in either of the arguments that was offensive or calculated to provoke an assault. It was shown that all of the persons indicted were members of the Marine Firemen's Un-

ion and that they were on a strike, and that Donovan was the leader in charge of the strike and exercised some sort of control over his co-defendants in regard to their conduct while on the strike. From this circumstance it is suggested that the prosecuting witness and his friend, Cyrulik, may have incurred the ill-will of the plaintiff in error and the other members of the Marine Firemen's Union because Smith and Cyrulik were working on the *C. W. Watson* without being members of the union or because they were working contrary to the strike orders of the union. The testimony in regard to the labor troubles and the two trivial controversies already referred to is all the testimony in the record which tends to disclose any motive for the alleged assault made upon Smith and Cyrulik. The testimony on behalf of the State shows that about the time Smith and Cyrulik were leaving Cannavan's saloon someone struck Cyrulik in the face and at the same time plaintiff in error and Donovan were making an attack upon Smith. Smith was knocked to the floor, and he testifies that he heard Donovan say, "Kill him!" and that plaintiff in error and Donovan then kicked and stamped Smith until he became unconscious. The evidence shows that Smith was then carried and dragged to a vacant lot adjoining Cannavan's saloon and was thrown into a hole five or six feet lower than the sidewalk. Smith was next seen in another saloon at 9401 Ewing avenue about 12:05 A. M., which was fifteen or twenty minutes after the assault was made on him. He was in a dazed condition and his head was covered with blood. His left ear was severed from his head and it was afterwards found in the hole where he had been thrown. A physician was called and the police were notified and Smith was then sent to the hospital. He did not regain consciousness until the following morning. The police made inquiries in the different saloons in the neighborhood to find out where Smith had received his injuries. A police officer asked Cannavan if there had been any trouble in his

place, and Cannavan said no. Afterwards the police received information which led them to examine Cannavan's place, which they did, and discovered blood on the floor about the place where Smith is shown to have fallen when he was knocked down. The police officers received information that a number of men had been seen leaving Cannavan's place after the difficulty and going into a hall on the opposite side of Ewing avenue, which is shown to have been the headquarters of the Marine Firemen's Union. About an hour and a half after the assault was committed the police officers went to the hall of the Marine Firemen's Union and found Donovan there and the other defendants, all of whom, excepting Donovan, were arrested and locked up in the police station. The next morning Donovan, while sitting in the police station waiting for the case against the other defendants to be called, was identified by Cyrulik as one of the persons who had participated in the assault upon himself and Smith the night before in Cannavan's saloon, whereupon Donovan was placed under arrest.

The evidence is clear and convincing that the prosecuting witness was assaulted and maimed, as charged in the indictment, in Cannavan's saloon on the evening of September 6, 1909, as above stated. The defense relied upon is, that the plaintiff in error was not one of the parties in Cannavan's saloon on the night in question and that he had nothing whatever to do with the alleged assault. All of the parties charged with this offense deny that they were in Cannavan's saloon or that they had anything whatever to do with assaulting the prosecuting witness. This claim is supported by the testimony of John Kenney, Paddy Thompson and Cannavan, who claim to have been in the saloon at the time the difficulty occurred, and they testify that plaintiff in error was not present and that the blows received by Smith were struck by another man whose name is not given. According to their testimony this unidenti-

fied stranger is the only person who struck either Smith or
Cyrulik. As already stated, Smith and Cyrulik positively
identify Donovan and plaintiff in error as the persons who
committed the assault on Smith. These witnesses had been
in the saloon for a considerable length of time. They had
played four games of pool with plaintiff in error and Don-
ovan and had an opportunity to become acquainted with
them. Cyrulik testifies that after Smith had been knocked
down and kicked and beaten on the floor of the saloon,
Donovan and Conners,—Conners on the right and Dono-
van on the left of Smith,—took him out of the saloon,
each of the parties supporting him by his arms. When the
three parties left the door of the saloon Smith was in the
middle, with his head leaning forward and blood streaming
from his head and face. When the three parties reached
the sidewalk they turned in a northerly or north-westerly
direction. At this point the testimony of two other wit-
nesses, Clyde Wennestone and Arthur Herrick, is brought
to bear upon the situation. These two witnesses were on
the sidewalk and saw the three men come out of the sa-
loon. They identify Donovan as one of the parties who
was supporting the injured man, and by their testimony
they locate Donovan on the left of Smith. They testify
that there was another man on Smith's right, but they did
not have a fair look at his face and cannot identify him.
It is to be noted, however, that so far as these two wit-
nesses were able to identify the persons composing the trio
that came out of the saloon they corroborate the testimony
of Smith and Cyrulik. In this state of the proof the iden-
tity of plaintiff in error as one of the parties who commit-
ted the assault upon Smith was a question of fact for the
jury to determine. There are thus four witnesses who tes-
tify to Donovan's presence and participation in the assault,
against three who testify that he was not present. If the
jury saw proper to believe the testimony of the witnesses
for the People rather than those who testified for the de-

fendant, it is not the province of this court to set aside a conviction under such a state of facts as is disclosed by this record. Whether the evidence was sufficient to war- rant a verdict of guilty was in the first instance to be determined by the jury. In criminal cases the rule which has often been announced and constantly adhered to by this court is, that a verdict of a jury will not be set aside unless the finding is so palpably against the weight of the evidence as to indicate that the verdict is based upon passion or prejudice. *Cronk* v. *People,* 131 Ill. 56; *People* v. *Deluce,* 237 id. 541; *People* v. *Lutzow,* 240 id. 612.

Plaintiff in error contends that the court erred in not setting aside the verdict because the jurors were not regularly drawn in the manner provided by the statute. This question was not raised until after the verdict had been rendered. Without indicating what our view would be if this question had been raised before the trial was entered upon, it is a sufficient answer to the contention of plaintiff in error that he waived all right to question the manner in which the jurors had been drawn, by his failure to challenge the array and accepting the jury to try his case. A challenge to the array is the only manner in which the question now under consideration can be preserved for review. (*Borrelli* v. *People,* 164 Ill. 549; *Bruen* v. *People,* 206 id. 417.) A prisoner on trial has no right to sit by and allow irregular proceedings to occur without objection, and afterwards seek to have a judgment against him set aside because of such irregularities. When plaintiff in error accepted the twelve men to try his case, his acceptance was an expression of satisfaction on his part with the jury, and he cannot, after an adverse verdict, seek to reverse his action in accepting the jury and have the verdict set aside for some irregularity which existed at the time the jurors were accepted.

Again, plaintiff in error insists that a new trial should have been granted on account of newly discovered evi-

dence. The alleged newly discovered evidence is that of a boy by the name of Breckenridge. Breckenridge's name was endorsed on the back of the indictment as a witness for the People, but he was not present at the trial and did not testify. He was out of the State at the time of the trial. There is nothing in the affidavit which he makes that is material, except it has a slight tendency to impeach the testimony of the witnesses who testify for the People in regard to the prosecuting witness being brought out of Cannavan's saloon by two men. Breckenridge, a boy fifteen or sixteen years of age, states in his affidavit that he passed Cannavan's place about 11:50 P. M. on the night of the difficulty; that he heard loud talking in the saloon, and shortly afterwards saw several persons,—he thinks as many as seven men,—come out of the saloon in a sort of general mix-up, which he describes as resembling a game of foot-ball. He did not see three persons come out of the saloon in the manner described by the witnesses for the People. He does not pretend to identify any of the persons whom he saw come out of the saloon. He testifies that he did not see the two young men, Wennestone and Herrick, on the sidewalk at the time he passed the saloon. There is nothing in this evidence of such a conclusive character that we can say that had he testified to these facts it would have probably changed the result of the trial.

It is also contended under this assignment of error that the affidavits of Gladys Beckman and Hazel Steindorf required the court to grant a new trial on account of newly discovered evidence. These affiants were young ladies, and state that the witnesses Wennestone and Herrick were in their company on the evening of September 6, 1909; that they attended a party in company with these young men on that date, and that after the party was over the young men accompanied the girls to their home and left them about the hour of 9:45 P. M. They do not pretend to know anything of the whereabouts of their escorts after that hour.

There is nothing in these affidavits that is inconsistent with the evidence of Herrick and Wennestone. The difficulty occurred about two hours after they left the young ladies, which afforded them plenty of time to go to Cannavan's place. In the case of *People* v. *Williams,* 242 Ill. 206, this court had occasion to consider the rules of law which apply to the granting of new trials on account of newly discovered evidence. The alleged newly discovered evidence in this case fails in several particulars to meet the requirements of the rules announced by us in the *Williams case.*

Plaintiff in error next insists that the judgment should be reversed because of improper remarks made by the prosecuting attorney in his address to the jury. The remarks complained of are as follows: "About sending a man to the penitentiary for twenty years. Of course, that is up to the jury. You do not send to the penitentiary at all. You can indicate, as I stated before, what you think the punishment should be by signing a certain form of verdict. If you think it should be a penitentiary sentence for this kind of offense you have a right to indicate that by your verdict, but you do not fix the time. The law fixes the time a man goes to the penitentiary. There is no time fixed by the jury. It is indeterminate. After he is there a year he is subject to parole. He may be paroled at any time after the end of one year." It was objected that this statement tended to relieve the jury from the responsibility for the maximum punishment which might follow a verdict of guilty which fixed the punishment at imprisonment in the penitentiary. The statute provides that punishment for mayhem may be imprisonment in the penitentiary not less than one year nor more than twenty years, or a fine not exceeding $1000 and imprisonment in the county jail not exceeding one year. We think, when the entire statement of the State's attorney is considered altogether, that it could not have led the jury to believe that one year in the penitentiary would be the maximum time that plain-

tiff in error would be imprisoned. If the remarks were thus understood by the jury they would be highly improper and misleading, but we do not think that a fair construction of the entire statement would leave such impression on the minds of the jury. This case is unlike *Farrell* v. *People,* 133 Ill. 244, which is relied on by plaintiff in error. In that case the State's attorney told the jury that they should take into consideration the Good Time statute in fixing the punishment of the prisoner and fix his term in the penitentiary accordingly. This court held that the remark was prejudicial, as tending to deprive the prisoner of the benefit of the prison regulation in regard to making good time. No such consequence could follow from the remarks complained of in this case.

Plaintiff in error complains of undue latitude permitted by the trial court in the cross-examination of Donovan and Conners. We do not think there was any abuse of the discretion vested in the trial judge in this regard.

Plaintiff in error finally contends that the court erred in giving instruction No. 4 for the People and in refusing several instructions asked on his behalf. Given instruction No. 4, which is complained of, is as follows:

"The court instructs the jury, as a matter of law, that where the People make out such a case as would sustain a verdict of guilty, and the defendant offers evidence, when the proof is in, then the primary question is, (the whole evidence being considered, both that given for the defendant and for the People,) is the defendant guilty beyond a reasonable doubt? The law being that when the jury have considered all the evidence, as well as that touching the question of the *alibi* as the incriminating evidence introduced by the prosecution, then if they have any reasonable doubt of the guilt of the accused of the offense with which he stands charged then they should acquit, otherwise not."

The objection made to this instruction is, that it tends to limit the defense to an *alibi* and to exclude from the

jury all evidence of other defenses. The testimony that the plaintiff in error was not present at the commission of the crime did not amount to the defense of an *alibi* as defined in *People* v. *Lukoszus,* 242 Ill. 101, but it has been treated by the instructions for both parties as amounting to such defense. If there had been evidence of other defenses than that of the so-called *alibi* and the instruction excluded such evidence from the consideration of the jury, it would, indeed, be a grievous fault. But on looking into the record we fail to find any evidence which tends to prove any defense other than that the plaintiff in error was not present at the affray and therefore could not have been guilty. The testimony of the witnesses who say that the unidentified stranger did all the mischief is corroborative of the claim set up by plaintiff in error that he was not present and took no part in the fight, but aside from this the instruction does not exclude any evidence from the jury, but plainly advises them that the question of guilt or innocence is to be determined from a consideration of the whole evidence, both that given for the defendant and for the People. Plaintiff in error, in copying this instruction in his brief, omits the first clause and discusses only the last sentence as disconnected from the preceding statement. Such a method of discussing instructions is neither commendable in counsel nor helpful to this court. The refused instruction has had our careful consideration, and our conclusion is that there was no error committed by the court in this regard. Twenty-eight instructions were given on behalf of plaintiff in error, which fully presented the law applicable to the case to the jury.

The judgment of the criminal court of Cook county is affirmed.                                    *Judgment affirmed.*