THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BRICE BLAIR, Plaintiff in Error.

*Opinion filed December 16, 1914.*

1. CRIMINAL LAW—*circumstantial evidence should exclude any reasonable doubt of the defendant's guilt.* Circumstantial evidence, while competent in a criminal case, should be of such a character as to exclude any reasonable doubt of the defendant's guilt, and it is not sufficient merely to prove circumstances which are as consistent with the defendant's innocence as with his guilt.

2. SAME—*an instruction condemned by Supreme Court should not be given.* An instruction which has several times been condemned by the Supreme Court should not be given, even though the court may not have considered the instruction prejudicial under the particular circumstances of the cases in which it was so condemned.

3. SAME—*the defense of alibi is not one which merely casts a doubt on the case made by the People.* It is not the law that the defense of *alibi* is one which merely casts a doubt upon the case made by the People, but, on the contrary, if it is certainly and satisfactorily established it is conclusive of the defendant's innocence.

4. SAME—*the defendant is entitled to observance of statute as to a sealed verdict.* One on trial for a crime is entitled to an observance of the statute which requires the jury in a criminal case to be returned into court after agreeing upon a verdict, except in case of a misdemeanor, where the parties, by an agreement entered upon the minutes of the court, have consented to the separation of the jury after delivery of a sealed verdict to the clerk of the court. (*Reins* v. *People,* 30 Ill. 256, *Gott* v. *People,* 187 id. 249, and *Farley* v. *People,* 138 id. 97, distinguished.)

WRIT OF ERROR to the Circuit Court of Vermilion county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

BARNETT & BOYLE, and ACTON & ACTON, for plaintiff in error.

P. J. LUCEY, Attorney General, JOHN H. LEWMAN, State's Attorney, and C. H. LINSCOTT, (C. M. CRAYTON, of counsel,) for the People.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On July 29, 1913, a garage of Charles B. DeLong at Fithian, in Vermilion county, was broken into in the night time and a number of automobile tires were stolen. Clarence Barthel and the plaintiff in error, Brice Blair, were indicted for the crime. Upon a trial Barthel was found not guilty and Blair guilty. Sentence was pronounced upon the verdict, and the record is under review in pursuance of a writ of error.

The defendant Blair had asked for a separate trial, which was denied, and a large part of the evidence in the record relates to Barthel, who was found not guilty. The evidence which it is claimed established the guilt of the defendant Blair was as follows: He was engaged in the business of buying vegetables and fruits from commission houses in Danville and peddling them through the country, and had been so engaged for five years. On the morning of July 28, 1913, he bought fifteen bushel-baskets of peaches and a lot of small baskets. He put the peaches in the small baskets and went out through the country with them, and reached Fithian, fifteen miles from Danville, in the afternoon of July 29, and he had then disposed of all of his peaches. He was accustomed to buy old rubber on his peddling trips, and he went into the garage of DeLong, at Fithian, between one and two o'clock in the afternoon and inquired for scrap automobile tires but was told that they had none. He was driving a spring wagon with two horses, and he tied the horses in the shade by a blacksmith shop. The blacksmith testified that the horses were shod with plain No. 2 shoes and the wagon tires were inch-and-a quarter wide and considerably worn. The burglary was effected by breaking open the rear door of the garage at the alley, and tracks were found of some vehicle which had backed up to the door. The blacksmith testified that the tracks were of inch-and-a-quarter tires and the hoof-prints

in the ground were of No. 2 horse shoes without calks, but there was nothing to distinguish either shoes or tires from any others. Plain shoes are in common use in the summer time and a large proportion of spring wagons have tires of that width. Several witnesses for the People testified that the defendant came to a school house, called the Black school house, at noon and fed his horses there, cooked and ate, and remained until some time in the evening, and a man who passed in an automobile at a quarter before ten o'clock said he had a passing glance of a team standing there. This testimony that he was at the school house covered the time that other witnesses said that he was in Fithian and went into the garage. Neither the tires stolen nor any proceeds were traced to him in any way and it was not shown that he ever had possession of any of them. Eight of the tires were found on September 8, 1913, on the Kelley hill, near a road, and covered with weeds and brush. Another was found near the Hungry Hollow road, and some were found in the possession of Barthel, who was found not guilty. There was a witness whom the State's attorney asked the court to call as a court witness, but the court refused, and on examination by the State's attorney the witness said that he heard the defendant Blair say to a man named Bluegrass that if he knew it was for this party, why, he would not have done it, and said for Barthel, or something like that, and then Bluegrass came over and told Boney Deneen that he thought Blair was a big chump. The witness did not know what the defendant was talking about or whether it had any connection with the burglary, but it was the next day after it occurred. His testimony did not prove anything relevant to the case, and the jury did not think so, since they found Barthel not guilty. The defendant admitted that he went into the garage and inquired for old rubber, but denied that he committed the burglary and testified that he drove from Fithian to Danville. Several witnesses who measured the tires of

the spring wagon during the trial testified that they were inch-and-a-half in width, and other witnesses testified that in the evening of July 29 the defendant was in a saloon in Danville playing cards until quite late.

The People rely upon circumstantial evidence, which is competent and is frequently convincing, but it must be of such a character as to exclude any reasonable doubt of the defendant's guilt. The conclusions of a jury concerning controverted questions of fact are rarely to be disturbed, because it is their especial province to determine where the weight of the evidence lies, but it will necessarily appear in this case that if all the evidence for the People were taken as true, the circumstances would still be quite inconclusive of the defendant's guilt. All the facts proved might be true and yet be entirely consistent with his innocence. The same evidence would apply with equal force to any other persons who were in the garage on July 29, and his inquiry for old rubber, which he was accustomed to buy, would scarcely raise a suspicion of an intention to steal new rubber automobile tires. All that can be said of the evidence is that it was consistent with the guilt of the defendant, but it was equally consistent with his innocence.

The defendant having offered evidence tending to prove an *alibi*, the court gave to the jury the same instruction respecting that defense which was given in *Ackerson* v. *People*, 124 Ill. 563, in which it was characterized as one tending merely to cast a reasonable doubt on the case made by the People. The court there said that it was not true, as a legal proposition, that the defense of *alibi* tends merely to cast a reasonable doubt on the case made by the People, and that the defense controverts the guilt of the defendant and if certainly and satisfactorily established would be conclusive of the defendant's innocence. The instruction was again given in *Sheehan* v. *People*, 131 Ill. 22, where the statement was again condemned, and the court said that where the defendant proved by reliable evidence that he

was not at the place when or where the crime was committed such evidence would be conclusive of his innocence. The judgment was not reversed in either of those cases, because the instruction was not regarded as prejudicial in view of further statements contained in it and other instructions. It was again given in *People* v. *Lukoszus,* 242 Ill. 101, where it was said that the instruction had been condemned in the former cases, and that it would be just as proper and accurate as a statement of law to say that any other defense tends merely to cast a reasonable doubt upon the case made by the People. Although it is possible that an antidote may be found elsewhere for a hurtful statement which is not the law, an instruction repeatedly condemned by this court should not be given. Counsel for the People are mistaken in saying that this instruction was approved verbatim in *People* v. *Conners,* 246 Ill. 9, as the instruction in that case did not contain the objectionable statement contrary to the law. The jury might have disbelieved the witnesses in this case as against the testimony for the People because of their habits and associates, but it was wrong to tell the jury that the defense of an *alibi* merely tended to cast a reasonable doubt upon the case made by the People.

The jury, having been instructed, retired in charge of a bailiff and agreed upon a verdict, which was placed in a sealed envelope and delivered to the bailiff, and they then separated. At the opening of the court the next day the bailiff handed to the court the verdict in the sealed envelope, and the defendant objected to receiving, opening and recording the verdict. The court then said he understood there had been an agreement for a sealed verdict and the bailiff in charge of the jury had informed him by telephone that the verdict was not guilty and the court then told him to take a sealed verdict. Section 15 of division 13 of the Criminal Code requires the jury in any criminal case to be kept together until they shall have agreed upon a verdict

and when they shall have agreed they are to be returned
into the court, but it is provided that in case of misde-
meanor, only, if the prosecutor for the People and the per-
son on trial, by himself or counsel, shall agree, which agree-
ment shall be entered upon the minutes of the court, that
the jury, when they have agreed upon their verdict, may
write and seal the same and after delivering the same to the
clerk shall separate, it shall be legal for the court to carry
into effect any such agreement and receive any such verdict
so delivered to the clerk as the legal verdict of such jury.
In this case the sealed verdict was not delivered to the
clerk but was kept by the bailiff and there was no entry on
the records of the court of any agreement for such a ver-
dict.  It is quite clear that the verdict was ordered to be
taken on the statement, by telephone, that the verdict was
not guilty, but when read in court it proved to be a verdict
of guilty.  In *Reins* v. *People,* 30 Ill. 256, there was an
agreement entered on the record that the jury might seal
their verdict and disperse and return the sealed verdict into
court the next day.  In what was said in that case as to
the general rule apart from any statute, the court undoubt-
edly had in mind the separation of a jury in the course of
the trial and not a disregard of the statute enacted for the
protection of the accused.  This is apparent from the state-
ment in the opinion that the statute had nothing to do with
the case.  In *Gott* v. *People,* 187 Ill. 249, the complaint
was that the court permitted the jurors to separate during
the trial without the consent of the accused, but it was not
claimed that there was a separation after the jury retired to
consider their verdict.  *Farley* v. *People,* 138 Ill. 97, was
said not to be a case of a jury having been allowed to sepa-
rate during the progress of a trial, in which case it must
appear that some injury resulted to the defendants.  The de-
fendant on trial for a crime has a right to have the provi-
sion of the statute observed.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*