## No. 10,401.

### HOFFMAN, ET AL. *v.* THE PEOPLE.

Decided February 5, 1923.

Defendants were convicted of a violation of the prohibition act.

### *Affirmed.*

1. PROCESS—*Venire—Service—Sheriff Disqualified.* Section 1299, R. S. 1908, concerning the disqualification of a sheriff to serve process, is mandatory, but not self-executing. In no event may a sheriff be disqualified until a proper affidavit is filed with the court clerk, which should be done at the earliest practicable opportunity.

2. APPEAL AND ERROR—*Service of Venire by Agreement.* Where a defendant in a criminal case consented to the service of a venire by a court bailiff, his contention on review, that the process was not served by the proper officer, is overruled.

3. PRACTICE AND PROCEDURE—*Jury—Objections.* Where objection is made to jurors summoned on an open venire, a motion to quash the open venire is the proper procedure.

4. CRIMINAL LAW—*Jury List.* Under the provisions of section 1955, R. S. 1908, a defendant in a misdemeanor case is entitled to a list of jurors only upon request made in apt time.

5. WORDS AND PHRASES—*Crime and Misdemeanor*, defined.

6. WITNESSES—*Credibility—Conviction of Misdemeanor.* Under the provisions of section 7266, R. S. 1908, the conviction of a person of a misdemeanor may be shown for the purpose of affecting his credibility as a witness.

7. CRIMINAL LAW—*Accessories—Testimony.* A person may be convicted of a criminal charge in Colorado upon the uncorroborated testimony of an accomplice, but it must be clear and convincing, be received with great caution, and show guilt beyond a reasonable doubt.

*Error to the District Court of Prowers County, Hon. A. F. Hollenbeck, Judge.*

Mr. D. B. KINKAID, for plaintiffs in error.

Mr. VICTOR E. KEYES, attorney general, Mr. SAMUEL CHUTKOW, assistant, Mr. ALLYN COLE, for the people.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE defendants were convicted under an information charging them with manufacturing for sale and gift intoxicating liquors. Each of them was sentenced to pay a fine of $300.00. Of the numerous errors assigned only four are argued, and these only are determined.

1.   It is said that the jury which tried the case was, over defendants' objection, unlawfully impaneled. Six days before the time set for trial, counsel for defendants, to whom, at his request, the clerk had, as our statute requires, furnished the list of the regular jury panel summoned for the term, said to the court that if, because of its depletion, which then was apparent by reason of the failure to serve some jurors, and the order of the court excusing others, it became necessary to issue an open venire to supplement the regular panel, he would object to the service of the same by the sheriff and his deputies on the ground of disqualification, these officers being witnesses for the State and against the defendants. Whereupon the court asked if there were any objections to Mr. Watson, the court bailiff, serving that venire, to which question defendants' counsel said that there would be no objection. In other words, the defendants consented that Watson might serve it. During the time between this colloquy and the trial day, several open venires were issued and directed to the sheriff, some of which were served by that officer, and some by Watson. On the trial day, and after the case was called and the jurors, including about six brought in by these open venires, were ordered into the jury box, and before they were sworn, the objection was made by defendants to these

open venire jurors on the ground that they were unlaw-
fully summoned by the sheriff and Watson and not by the
coroner on whom the statute devolves the power when the
sheriff is properly disqualified.

It is said in defendants' brief, and it seems to be true,
that it was not until the jurors were directed to take their
seats in the box, that their counsel discovered, from the
list which the clerk had previously given him, that about
six of them were not on the regular panel, but had been
thus summoned by open venire. It was at this juncture,
and not before, that a disqualifying affidavit on the ground
stated was made by one of the defendants and filed with
the clerk. The contention is, in light of the foregoing that
the court grievously erred in overruling defendants' mo-
tion to disqualify the sheriff and to substitute the coroner.
If the facts were as defendants wrongly assume them to
be, the denial might have been error. There is in the rec-
ord what purports to be an order overruling in its entirety
the motion. A supplementary certificate of the clerk, and
one by the trial judge incorporated in the record, show that
the entry of the order was the result of a mistake by the
clerk, he supposing that the court had actually made it.
Both supplementary certificates, however, show that the
court, in denying the motion, specifically restricted applica-
tion of the order to the venires previously issued and
served, but as to any further open venires that might be
issued, the process would run to the coroner and not to the
sheriff. This ruling was upon the ground that jurors al-
ready brought in by open venires served by the sheriff, or
by a person agreed upon by the parties, were not subject
to the disqualifying affidavit which was not made until
after the jurors alleged to have been improperly served
were in the box.

For several reasons we think there was no error in this
ruling. Section 1299 R. S. 1908, provides that when a
party makes and files with the clerk an affidavit stating
that he believes that the sheriff will not by reason of
partiality, prejudice, consanguinity or interest, faithfully

perform his duties in any suit commenced or about to be commenced, the clerk shall direct all process therein to the coroner, who shall execute the same in like manner as the sheriff might have done. The very words of the statute suggest that the disqualifying affidavit should be made promptly. It may be made even before the suit is commenced. It should be made at the earliest practicable opportunity, certainly before an open venire is issued and served, if, as was the case here, the party then knew of the disqualification. In no event may a sheriff be set aside as disqualified, unless and until, such an affidavit is made and filed with the clerk. After such an affidavit is filed, and not before, the sheriff is disqualified. The statute is mandatory. *Litch v. People,* 19 Colo. App. 433, 75 Pac. 1083; *General Film Co. v. McAfee,* 58 Colo. 344, 145 Pac. 707; *Kelliher v. People,* 71 Colo. 202, 205 Pac. 274. It is, however, not self-executing. It is not set in motion until the prescribed affidavit is made. The syllabus of the Kelliher case in the Pacific Reporter *supra* correctly states the pith of Judge Allen's opinion in this language: "It was error, in view of the mandatory character of the statute, to permit the sheriff to serve process after accused had filed an affidavit of partiality." In *Peck v. Farnham,* 24 Colo. 141, 49 Pac. 364, one of the errors assigned was that the court denied the application of the defendants that the special venire issued for jurors be served by the coroner. One of the reasons for holding the order not erroneous was, that the affidavit in support of the defendant's application to set aside the sheriff, was not made until after the venire was served by him. It is not decisive of this assignment, but it is pertinent further to observe that no complaint is made that any of the jurors summoned upon open venire were objectionable, and the defendants did not exercise all of their peremptory challenges.

Even if the disqualifying application had seasonably been made, it is doubtful if it operated as such. In the motion for a new trial, the objection to the sheriff was said

to be the fact that he and his deputies were witnesses for the State. It has been decided that this fact does not bring the case within the principle of a disqualifying statute like ours. 24 Cyc. p. 227; *People v. Lowhone,* 296 Ill. 391, 402, 129 N. E. 781; *People v. Ponsford,* 181 Mich. 659, 148 N. W. 236; *State v. Jeffries,* 210 Mo. 302, 323, 109 S. W. 614, 14 Ann. Cas. 524; *Jackson v. State,* 167 Ala. 44, 55, 52 So. 835.

For another reason this assignment of error is not well taken. When defendants' counsel, in effect, consented to the serving of an open venire by Watson, defendants should not be heard now to say that he was not a proper officer to act in place of the sheriff. True, the coroner is the officer designated by the statute to act in such a contingency. We do not even indirectly insinuate that learned counsel is acting in bad faith in here alleging the incompetency of Watson. His reason for doing so is evidently because he believes that Watson was incompetent. We might concede that he would be, were it not that the trial court was led to believe, and we think rightly did conclude, that the defendants consented that Watson might serve the process. When the objection of defendants' counsel was made to the jurors brought in by Watson, the trial court did not decide, and had no occasion to decide, the abstract question as to whether or not Watson, as court bailiff, might lawfully serve an open venire. This appears not only from the colloquy between the presiding judge and the defendants' counsel six days before the trial, but also on the day of the trial when the defendants first specifically objected to the jury. Defendants' counsel then said: "If Mr. Watson did serve it, (the open venire), he is not qualified to serve a special venire, unless he is agreed upon."

With that implied admission that Watson was competent, if agreed upon, considered in connection with the previous consent to Watson acting in lieu of the sheriff, the trial court was justified in its ruling, since it was rightly led to believe that it was agreeable to the defendants. Even though we are wrong as to this conclusion, the proper prac-

tice to raise the question in such cases was not observed. The defendants say that a challenge to the array, or a motion to quash the panel of jurors composed, in part of men who were in the original panel, and in part of those brought in by special venire, was inappropriate because the objection went only to the open venire jurors. Certainly a motion to quash the open venire, and to dismiss the jurors summoned, would be good practice and was appropriate in this case, and should have been resorted to. No such motion was filed. It was necessary in this way to preserve for review the question of the alleged irregularity of summoning a jury. *People v. Connors,* 246 Ill. 9, 15, 92 N. E. 567; *Saunders v. State,* 4 Okl. Cr. 264, 111 Pac. 965, Ann. Cas. 1912B, 766.

2. The second assignment is that a proper list of the jurors was not furnished to the defendants, or their counsel. Section 1955 R. S. 1908, makes it imperative that every person charged with murder shall be furnished, previous to his arraignment, with a copy of the list of jurors. In all other cases such a list must be furnished at the request of the defendant or his counsel. In *Giano v. People,* 30 Colo. 20, 69 Pac. 504, which was a misdemeanor case like the one before us, the court construed this same section. The defendant there, two days after his arraignment, made a request that the list of jurors and witnesses be furnished him. The court denied the request, and the defendant excepted. In the Supreme Court the defendant assigned this ruling as error, and it was held that the request should have been made before formal arraignment; otherwise it was waived, citing *Kelly v. People,* 132 Ill. 363, 371, 21 N. E. 56, our statute being substantially the same as that of Illinois. In the present case a refusal of the request of these defendants would have been justified, because the request therefor was not made in apt time. The request of counsel here was not denied, but a list of the jurors on the panel, at the time the request was made, was furnished. Thereafter no further request was made by the defendants for such a list until the day of the trial, when

the clerk gave to counsel a list of the jurors then upon the panel, promptly on request therefor. This assignment is wholly without merit.

3. The trial court permitted the district attorney to ask one of the defendants if he had not been convicted in the state of Kansas of a misdemeanor, and the defendant, in answer to the question, said that he had been. Defendants say, since our statute (section 1608, R. S. 1908) reads, "A crime or misdemeanor consists in a violation of a public law", this definition indicates that in the minds of the law-makers there is a distinction between a crime and a mis-demeanor in our state; and since section 7266 of our revised statutes says: "The conviction of any person for any 'crime' may be shown for the purpose of affecting the credibility of such witness", by necessary implication, his conviction for a misdemeanor may not be shown. We do not agree with this contention. The language of section 1608 is itself against it, for there the definition of a crime is the same as that of a misdemeanor, each consisting of a violation of a public law. In *City of Greeley v. Hamman,* 12 Colo. 94, 20 Pac. 1, this Court, after quoting our statutory definition of a crime, said: "Since felonies are defined in the constitution to be offenses punishable by death or imprisonment in the penitentiary, it follows that, under the foregoing statute, misdemeanors are violations of the public laws not thus punishable."

In *McInerney v. City of Denver,* 17 Colo. 302, 29 Pac. 516, at page 312, it was said that our statutory definition of a crime or misdemeanor is the same as that given by Blackstone, and generally adopted elsewhere. Webster, in defining crime, uses this language: "Crime includes all grades of public offenses, which at the common law are often classified as treason, felony, and misdemeanor."

In defining a crime, Blackstone, Book 4, p. 5, says: "A crime, or misdemeanor, is an act committed, or omitted, in violation of a public law, either forbidding or commanding it. This general definition comprehends both crimes and

misdemeanors; which, properly speaking, are mere synonymous terms, though, in common usage, the word 'crimes' is made to denote such offenses as are of a deeper and more atrocious dye."

Citing Blackstone's definition of crime, Black, in his law dictionary, at page 299, says: "But the better use appears to be to make 'crime' a term of broad and general import, including both felonies and misdemeanors."

In *Chase v. People*, 2 Colo. 509, 512, this Court said: "By the common law all offenses below the degree of felony are denominated misdemeanors."

In Missouri, New Jersey and Massachusetts, under statutes similar to ours, their courts say that the conviction for a crime might be shown to impeach a defendant, and that the word "crime" in the impeaching statutes is used in the sense of a public offense and includes misdemeanors. *State v. Blitz*, 171 Mo. 530, 540, 71 S. W. 1027; *State v. Henson*, 66 N. J. L. 601, 50 Atl. 468, 616; *Commonwealth v. Hall*, 4 Allen, 305; *Commonwealth v. Ford*, 146 Mass. 131, 132, 15 N. E. 153.

In *United States v. Zarafonitis*, 150 Fed. Rep. 97, 101, 80 C. C. A. 51, 10 Ann. Cas. 290, the court adopted Blackstone's definition that crime and misdemeanor are, properly speaking, synonymous terms.

In *Callan v. Wilson*, 127 U. S. 540, 549, 8 Sup. Ct. 1301, 32 L. Ed. 223, the court said the term "crime" as used in the third article of the Constitution, was broad enough to include misdemeanor. There was no error in the ruling complained of.

4. The defendants' counsel asked the court to instruct the jury to the effect that the defendants be found not guilty because the only evidence of guilt was the uncorroborated testimony of an accessory or co-defendant. Such is not the law in this jurisdiction. *Solander v. People*, 2 Colo. 48, 67; *Roberts v. People*, 11 Colo. 213, 219, 17 Pac. 637; *O'Brien v. People*, 42 Colo. 40, 42, 94 Pac. 284; *Moynahan v. People*, 63 Colo. 433, 167 Pac. 1175; Wharton on Criminal Evidence, p. 926.

The court properly instructed the jury to receive such testimony with great caution. Our decisions, ever since the Solander case, are to the effect that one may be convicted upon the uncorroborated testimony of an accomplice, but that it must be clear and convincing, must be received with great caution, and show guilt beyond a reasonable doubt.

Aside from this, however, there were at least three witnesses for the People in this case who corroborated, in substantial and important particulars, the testimony of the alleged accomplice.

None of the errors assigned are well taken, and the judgment is accordingly affirmed.