## No. 12,350.

### HAMILTON *v.* THE PEOPLE.
#### (287 Pac. 651)

Decided April 21, 1930.

Mr. F. T. JOHNSON, Mr. S. H. JOHNSON, Mr. O. A. JOHNSON, for plaintiff in error.

Mr. ROBERT E. WINBOURN, Attorney General, Mr. E. J. PLUNKETT, Assistant for the people.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defendant, on conviction of conspiracy to defraud and attempt to defraud "by means of a confidence game," was sentenced to the penitentiary for a term of seven to ten years. To review that judgment he brings error.

The eleven assignments present but two questions requiring consideration: (1) The validity of a conviction on what is said to be the uncorroborated testimony of an accomplice; (2) the admissibility of evidence that defendant was an ex-convict.

Since 1922 one Hildebrand and his wife Mae owned certain Denver real estate which they had bought from one Manwaring. It was priced at $40,000 and listed for sale with the Warwick Investment Company. Warwick brought to Hildebrand, as a prospective purchaser, one Stone who represented that his name was Manwaring. Under that alias he made a written offer of $37,000, which was countered by one of $38,500, on which Stone (in the name of Manwaring) indorsed a written acceptance. A contract of sale was accordingly drawn and signed by Hildebrand. Under this contract a loan of $13,500 was to be carried back. A week later an application was made to the Midland Savings and Loan Company, in the name of Hildebrand by Manwaring as his agent, for a loan of $16,500. A "waiver of mechanics' liens" and a "first mortgage bond," purporting to be signed by Hildebrand and his wife, but in fact signed by one Rucker and one Mrs. Mendenhall were executed. Stone also procured a $25,000 insurance policy on the premises. A few days thereafter Stone, accompanied by Rucker and Mrs. Mendenhall (the last two posing as Hildebrand and wife) went to the office of the Midland Company to close the loan and get the money. They were there confronted with the real Hildebrands and officers, the participants

in the plot were arrested, and Hamilton, Stone and Rucker were tried jointly. The evidence showed that defendant Hamilton was acting in concert with Stone and had procured Mrs. Mendenhall to impersonate Mrs. Hildebrand and sign her name, Hamilton knowing the purpose for which the papers were to be used, but leading Mrs. Mendenhall to believe that she was merely helping to straighten out a title by signing a purely fictitious name in which the property had been placed. Hamilton did not take the stand but Stone did.

1. It is said that defendant was convicted on the uncorroborated testimony of an accomplice. If so, no rule was violated. *Hoffman v. People,* 72 Colo. 552, 212 Pac. 848.

It is admitted that the testimony of one accomplice was corroborated by that of another. When corroboration is required this is sufficient. *Tollifson v. People,* 49 Colo. 219, 112 Pac. 794.

2. Stone and Hamilton had been in the penitentiary at the same time. The latter was now living at a Denver hotel. When Stone was released he at once took up his abode there, and within a week we find them deep in the machinations of this confidence game. They had been associated together in 1926. On cross-examination Stone was asked when he next saw Hamilton. He answered, "In Canon City. In the penitentiary. Q. But you did have conversations and talk to one another? A. Yes." Proper objections were made and exceptions saved to this examination and it is now asserted that this was unjustified attack upon the reputation of Hamilton by showing that he was an ex-convict, contrary to the principles applied in *Ryan v. People,* 66 Colo. 208, 180 Pac. 84. If the rule that the prosecution cannot, in the first instance, directly or indirectly attack the character of the defendant by showing conviction of guilt of other offenses, be given the construction and application here contended for, then the penitentiary becomes a sanctuary where conspiracies may be hatched and crimes committed

with impunity, since the people can take no step toward their disclosure without revealing the place of their perpetration, and since that of itself casts a cloud upon the reputation of the accused. There is no such law. The true rule is that evidence of former convictions or other offenses may not, in the first instance, be directly or indirectly introduced if not material and relevant to the fact in issue, but, if so material and relevant, it is not excluded. 8 R. C. L., p. 200, §195; *State v. Moran,* 131 Ia. 645, 109 N. W. 187.

Here a conspiracy was charged. It was unlikely that it could have been arranged prior to Stone's incarceration, or had been perfected during his brief association with Hamilton since his release. When, however, it appeared that Stone and Hamilton were old acquaintances, that they had recently been together in the state penitentiary and had there conversed, and that on Stone's release he came at once to Hamilton's residence, and had made that his home to the date of the attempted perpetration of the fraud, the gap was bridged. Such evidence was clearly admissible.

Since an examination of the abstract in the Ryan case, supra, discloses that the sale of intoxicating liquor there charged was made in a house conducted by defendant, it would appear that the exclusion of the incidental evidence of the character of the place was a violation of the rule here announced. Since the opinion does not mention the place of sale and cites no authority, the true basis of it is not easy to ascertain. So far as it may be in conflict with our present conclusion it is overruled.

For the foregoing reasons the judgment in the instant case is affirmed.