No. 12,547.

PEOPLE EX REL. COLORADO BAR ASSOCIATION *v.* BOUTCHER.

(4 P. [2d] 910)

Decided October 5, 1931.   Rehearing denied November 9, 1931.

Mr. ROBERT E. WINBOURN, Attorney General, Mr. CLARENCE L. IRELAND, Attorney General, Mr. CHARLES ROACH, Deputy, Mr. OLIVER DEAN, Assistant, Mr. HARRY S. SILVERSTEIN, for petitioner.

Mr. S. D. CRUMP, Mr. I. L. QUIAT, for respondent.

*En Banc.*

MR. CHIEF JUSTICE ADAMS delivered the opinion of the court.

THE Attorney General, on leave granted, filed a peti-

tion in disbarment against J. H. Boutcher, an attorney at law. An order to show cause was entered, respondent answered, and this court appointed one of its members, Honorable Julian H. Moore, as referee, who, after taking testimony in the matter, made his written report to the court. The referee finds respondent guilty of gross professional misconduct in the practice of law in this state as charged in the petition. Respondent has filed his objections to such report, and the matter is now before us for final determination on such report and the objections thereto.

The referee's report, omitting the title, is as follows:

"Referee's Report.

"Upon recommendation of the grievance committee of the Colorado Bar Association and by direction of the Supreme Court, the Attorney General, on the 27th day of January, 1930, filed a petition charging J. H. Boutcher with gross professional misconduct, as follows:

'1. On, to-wit, August 1, 1927, at Denver, Colorado, respondent caused and procured and aided and abetted in causing and procuring Anna Stokes, Melissa F. Hogue and John H. French to sign, and they did sign, their names as witnesses to an instrument of writing purporting to be the last Will and Testament of L. H. Fordham. Said instrument of writing was dated July 12, 1924, and the certificate of witnesses on such instrument, together with the signatures of said witnesses, is as follows:

'Signed, sealed, published and declared by the said L. H. Fordham, the said testatrix, as and for her last will and testament, in the presence of us, who, in her presence, and in the presence of each other, and at her request have signed as witnesses hereto this 12th day of July, 1924.

'Anna Stokes                    1627 Lawrence Street
'Melissa F. Hogue               1627 Lawrence Street
'John H. French                 1314 Gilpin

'Said L. H. Fordham was not present at the time said

witnesses signed said instrument, and this fact respondent well knew.

'On, to-wit, July 28, 1927, the clerk of the probate court of Garland County, Arkansas, issued to Thomas L. Bonfils, as clerk of the county court of the City and County of Denver, State of Colorado, a commission to take the depositions of said Stokes, Hogue and French, in proof of the execution of the aforesaid instrument by said L. H. Fordham as her last Will and Testament, and thereafter, and on, to-wit, August 16, 1927, respondent caused and procured and aided and abetted in causing and procuring said Stokes, Hogue and French to appear before the said Bonfils at his office in the court house in Denver, Colorado, and then and there under oath to give their depositions in proof of the execution of said instrument by said L. H. Fordham as her last Will and Testament and then and there to sign and swear to a typewritten statement concerning said instrument as follows:

'Proof of Will

'State of Colorado           ss
'City and County of Denver,

'In regard of the probating
of the will of the late      ss
L. H. Fordham,

'Personally appeared before me Thomas L. Bonfils, Clerk of the County and Probate Courts of Denver County, Colorado, Anna Stokes, Melissa F. Hogue and John H. French to me well known, who being duly sworn, say: that they are the subscribing witnesses to the foregoing instrument of writing purporting to be the last will and testament of L. H. Fordham, deceased; that said instrument was executed at the time, place and by the person therein named; that said L. H. Fordham, the testatrix was at the time of signing said instrument upwards of twenty-one years of age, and of sound and disposing mind and memory, and that in the presence of all of these affiants she declared it to be her last Will and Testament

and subscribed her name thereto in the presence of all of these affiants; that at the request of said Testatrix, affiants wrote their names to her said Will in her presence and in the presence of each other; that the subscriptions to the foregoing instrument of writing are genuine, and that the said instrument which is hereto attached is the identical one that affiants so witnessed and saw the said L. H. Fordham sign.

'Anna Stokes
'Melissa F. Hogue
'John H. French.

'Subscribed and sworn to before me this 6th day of August, 1927.

'Thomas L. Bonfils, Clerk County
Court, City & County of Denver,
(Seal)                         State of Colorado.

'The foregoing statements of said Stokes, Hogue and French that said instrument was executed at the time, place and by the person therein named; that in the presence of all of said affiants said L. H. Fordham declared said instrument to be her last Will and Testament and subscribed her name thereto in their presence; and that at the request of said Fordham affiants wrote their names to her said Will in her presence, were each and all false in every particular and were then and there known by respondents to be false.'

"Pursuant to a rule to show cause, on March 5, 1930, respondent filed his answer thereto wherein he denied gross professional misconduct and alleged:

'That the said witnesses mentioned appeared before the said Thomas L. Bonfils at his office in the Court House, at Denver, Colorado, of their own free will and volition through the influence or instigation of some other person or party to this respondent unknown. That this respondent appeared at the time and place of the taking of said depositions in proof of the execution of the purported will in said paragraph mentioned, as the attorney

and advisor of and at the request of Doctor Walter Fordham and for no other purpose whatsoever, and merely to see that the formalities incidental to the taking of the testimony and proof of the will were complied with.'

"He further alleged, in substance, that he had no knowledge or information concerning a purported will of L. H. Fordham until a few days before he appeared with the said witnesses before Thomas L. Bonfils, Clerk of the County Court of the City and County of Denver at the request of and as attorney for W. F. Fordham; that on or about the 6th day of August, 1927, W. F. Fordham brought the said three witnesses, Anna Stokes, Melissa F. Hogue and John H. French to his office; that prior thereto he had neither seen, spoken to nor met Anna Stokes; that he knew the witness John French prior to that time and had met the witness Melissa Hogue through Fordham; that all of the witnesses were friends of Fordham who had procured them to sign the Will without any knowledge on the part of respondent; that the only service rendered by respondent was the presenting and introduction of said witnesses to Thomas L. Bonfils, Clerk of the County Court; that respondent had no reason to doubt the genuineness of said Will and believed it to be a legal document; that some six months later he was informed that the will was forged and that this was the first time he was ever in doubt as to its genuineness and thereafter became suspicious of its validity and so informed L. J. Stark, an attorney of Denver who was retained by the Consul of Switzerland to investigate the validity of the will.

"Upon the issue so framed, the matter was set down for hearing and heard by your referee on the 28th day of November, 1930. Thereat witnesses were sworn who testified to the bad character and reputation of Anna Stokes and Melissa F. Hogue. Other witnesses, namely, Philip Hornbein, Otto Freidrichs, A. B. Manning and Gil-

bert McDonough, members of the Colorado Bar, testified that respondent was a lawyer of good reputation, of honesty and integrity. Respondent testified in substance as alleged in his answer. Depositions of Anna Stokes and Melissa F. Hogue, taken on oral interrogatories on May 16, 1930, at Long Beach, California, pursuant to stipulation, were offered and received in evidence. Both deposed that the three subscribing witnesses signed the will several years after July 12, 1924, its alleged date, in the absence of the testatrix and in the presence of each other and of respondent and W. G. Fordham; that respondent assured them that it was proper to then and there sign said instrument and that later respondent accompanied them to the Court House and was present when they appeared before Thomas L. Bonfils, Clerk of the County Court, and signed the ''Proof of Will'' affidavit in question.

''At the close of the hearing, respondent was allowed five days in which to submit affidavits concerning the general character and reputation of Anna Stokes and Melissa F. Hogue. Such affidavits were filed by A. B. Manning and John R. Walker.

''Based upon the foregoing evidence, the referee finds that respondent has been and is guilty of gross professional misconduct in the practice of law in this state as charged in said petition.

''Julian H. Moore,<br>
''Referee.''

The substance of respondent's objections to the report of the referee is, ''That the Referee's findings and conclusions of necessity have been based on the testimony of two witnesses, Melissa F. Hogue and Anna Stokes.'' The remaining portion of the objections are argumentative, to the effect that we must disbelieve or disregard the testimony of the above named witnesses, whose depositions were read, because their credibility has been impeached. There is little, if any, attempt to contradict

the proof that the declarations in the attestation clause of the purported will of the late Mrs. Fordham were false, or that the testimony with reference thereto given before the clerk of the county court of the City and County of Denver was perjured. This seems to be conceded. The question before us pertains to respondent's alleged participation in the offense as charged.

■ 1. The extent of the reliance to be placed on the testimony of accomplices is settled in this state by a line of unbroken decisions of this court beginning with the second volume of our reports and continuing to the eighty-seventh. *Solander v. People*, 2 Colo. 48, 67; *Hoffman v. People*, 72 Colo. 552, 559, 560, 212 Pac. 848; *Hamilton v. People*, 87 Colo. 307, 309, 287 Pac. 651. The rule is stated by Mr. Justice Campbell in *Hoffman v. People, supra,* at pages 559 and 560, as follows:

"The defendants' counsel asked the court to instruct the jury to the effect that the defendants be found not guilty because the only evidence of guilt was the uncorroborated testimony of an accessory or co-defendant. Such is not the law in this jurisdiction. (Citing cases.)

"The court properly instructed the jury to receive such testimony with great caution. Our decisions, ever since the Solander case, are to the effect that one may be convicted upon the uncorroborated testimony of an accomplice, but that it must be clear and convincing, must be received with great caution, and show guilt beyond a reasonable doubt."

We have not denied respondent the benefit of the above rule, but on the contrary have freely accorded it to him, and have not reached our conclusions without due consideration.

■ 2. In *Hamilton v. People, supra,* we said at page 309 of the reported case: "It is admitted that the testimony of one accomplice was corroborated by that of another. When corroboration is required this is sufficient. *Tollifson v. People,* 49 Colo. 219, 112 Pac. 794."

We apply the above quotation to the depositions of

Hogue and Stokes. They agree in essential particulars. Each tells her own story in her own way and in her own language. Each supplies details, some of which are omitted by the other. Some of these incidents are trifling in themselves, but they go to complete the perfect picture. The evidence of the witnesses Hogue and Stokes is such as to exclude any thought that they were coached or that their testimony was manufactured. The truth of their statements is also corroborated by surrounding facts and circumstances. These considerations have all entered into our judgment, as they must have done in the hearing before that arm of this court, the grievance committee of the Colorado Bar Association, and also later before the referee.

3. We have not overlooked the testimony of respondent's witnesses to the effect that the reputations of Hogue and Stokes for truth and veracity are bad, but if this be so, it has a double aspect. Such characters naturally would be sought after to lend their sordid talents to the commission of perjury. No other kind could have been procured. A person with habits of veracity would have indignantly scorned such an invitation.

We do not agree with respondent's counsel that to find him guilty will place honorable lawyers at the mercy of vindictive or unscrupulous clients or witnesses. Each case must be determined on its own facts and there is at least food for sober reflection in this observation of Dean Wigmore: "We have long since passed the period (as a modern judge has pointed out) 'when it is possible to punish an innocent man; we are now struggling with the problem whether it is any longer possible to punish the guilty'." 1 Wigmore on Evidence (2d Ed), § 21, p. 210.

4. The effect would be disastrous if we should depart from the rule of evidence which we have quoted from *Hoffman v. People, supra,* and declare the testimony of accomplices inadmissible, or reach the same result of

exclusion in argument by disparagement or by wholly discounting the probative force of such testimony. Such methods would aid in the perpetration of crime and insure immunity from punishment, so that the more odious the offense, the more impossible it might be to convict. As only one instance, it would place the law of descents and distributions under the domination and control of unscrupulous persons, who, at their will and pleasure, might easily beggar widows and orphans or other lawful heirs. It is unthinkable. For a lawyer to be engaged in such a pursuit is a menace to the public and estranges him from an honorable calling. The portrait as a whole, as presented by the record, is inconsistent with any conclusion other than that the charges against respondent have been amply sustained.

Respondent now goes by the name of J. H. Boutcher; his name so appears on his letterheads, but he applied for admission to practice law and signed his oath of office under the name of Jacob H. Butcher. His name so appears on our roll of attorneys. We make this statement only for the purpose of identification.

The objections to the report of the referee are overruled and the report is approved. It is the further judgment of the court that respondent's name be and hereby is stricken from the roll of attorneys and that he be and is disbarred from the further practice of law in this state.

Respondent disbarred.

MR. JUSTICE MOORE, who acted as referee, does not participate in the decision of the court. MR. JUSTICE BUTLER and MR. JUSTICE HILLIARD dissent.

MR. JUSTICE HILLIARD dissenting.

I am unable to concur in the judgment pronounced by the court. The only testimony which warrants the judgment was given in the form of depositions by Melissa F. Hogue and Anna Stokes. These women were ad-

mittedly guilty of a felony in the matter out of which this proceeding grew. They say the respondent procured them to make false oaths and this he denies. In addition to the fact that their reputations for truth and veracity were discredited by reputable witnesses, the reading of their depositions convinces me they are devoid of honor and unworthy of belief. The Hogue woman admitted an acquaintance of more than 30 years with Fordham, the man in whose interest, through these witnesses, it was sought falsely to establish a will. She and Fordham came from the same town in Arkansas. Mrs. Stokes, when testifying concerning the execution of the will, was asked, "Did you do it for Boutcher," and answered, "No, to help Mrs. Hogue." And again, that she went to Boutcher's office at the "request of Dr. Fordham and Mrs. Hogue."

When there was threat of prosecution these women fled the state, going by different routes and modes of transportation. They were intimates here and when their depositions in this proceeding were taken they were living at the same address in California. Manifestly it was to their continued interest to place the blame on the respondent and to shield themselves behind a claimed belief that they relied upon Boutcher's statement of the law.

Many small things in the record point to their lack of credibility. Mrs. Hogue testified that on the day the will was "witnessed" by them "Boutcher and Fordham —and I believe French was driving—came and took us to Boutcher's office." Mrs. Stokes' version was that "We walked to Boutcher's office. It was only two doors from where Mrs. Hogue lived." Boutcher says they were never in his office for the purpose of attesting a will. Are we to believe the statement of either of these women on this point when it is considered that Mrs. Hogue lived in the Loop Market Block, the place from which they both say they started for Boutcher's office in the Mining Exchange Building to witness the will? These

two places are separated by one block, too short a distance to require the use of an automobile as Mrs. Hogue testified they did, and too great a distance to be described as being "only two doors" apart, as Mrs. Stokes swore.

Boutcher's testimony was that his only connection with the will was to accompany Fordham and these women and French, the now missing third witness, to the court house, to supervise the taking of their depositions, the will having been sent to the clerk of the Denver county court by an Arkansas probate court for that purpose. He said he had no previous knowledge of the will. On the theory of his testimony he did nothing that any reputable attorney would not have done. Fordham had been his client and when he requested the respondent to go to the court house and attend the taking of the depositions he tendered employment not only unusual but quite otherwise.

Examination of the record must, as I view it, cast grave doubt upon the likelihood of the respondent's guilt. At least he should be accorded the benefit of that doubt, for it is accorded to the meanest of those who face criminal prosecutions. The loss of the right to practice his profession is of the most serious consequence to a lawyer. The hardships which the average American practitioner must go through to attain his license, the sacrifices of his family, are too familiar to need rehearsal. We should not lightly, or upon evidence clearly capable of an hypothesis of innocence, disbar a respondent brought before us; we should be convinced of his guilt beyond a reasonable doubt, and there is not that quantum of evidence here.

Boutcher is young and poor. He has struggled to emerge from the poverty which was the lot of his ancestors and into which he was born. There is testimony to this effect given by eminent and honorable members of the bar, who say that in all his professional relations he was high-minded, just and fair. To disbar this young man upon such testimony amounts to saying that we

shall no longer endeavor to struggle with the problem of punishing the guilty if an innocent man can possibly be convicted.

I think the objections of the respondent to the referee's report should be sustained and the rule discharged.

Mr. Justice Butler dissenting.

I join my brother Hilliard in dissenting from the judgment of disbarment.

Boutcher was admitted to practice twelve years ago. Before admitting him, this court was required by law to be "satisfied" that he was "of good moral character." C. L., §6000. That he has continued to be of good moral character is evidenced by the testimony of reputable members of this bar, and no one testified to the contrary, except the two women who swore to the misconduct charged against him in this proceeding. As said by my brother Hilliard, Boutcher denied emphatically any wrongful conduct, and made a reasonable explanation of his connection with the transaction. Opposed to his testimony is that of two confessed perjurers, whose testimony, as I read the record, is not corroborated by any fact or circumstances inconsistent with Boutcher's innocence. They confessedly committed perjury when they testified to the execution of the will; and their credibility was otherwise impeached by the testimony of credible witnesses, one of whom, who has been honored by his constituents by election to high office, said that both women "were generally reputed to be of the lowest moral type, were known for their trickery, falsity and unfairness in all business dealings, and bore the worst of reputations for truth and veracity." I find nothing in the record to suggest that these two women, who so willingly falsified in their testimony concerning the execution of the will, have undergone a radical change in their moral character and are now enlisted under the banner of Truth. That their testimony is admissible in evidence, no one connected with the case has disputed. There has

been no suggestion of a departure from the rule announced in *Hoffman v. People,* 72 Colo. 552, 212 Pac. 848, cited in the majority opinion. The probative force of such testimony in this case, however, has been challenged and, in my opinion, successfully challenged.

The charge against Boutcher constitutes a crime, punishable, in a proper proceeding, by confinement in the penitentiary. His counsel stated truly, in oral argument: "If Boutcher did what he is charged with, he not only should be disbarred, but also should be in the penitentiary; if he did not do what he is charged with, this proceeding should be dismissed; there is no middle course." On such a record as we have before us, I am unable to concur in finding Boutcher guilty of the felony with which he is charged.

For the reasons stated in my brother Hilliard's opinion and in this opinion, I respectfully dissent.