123 N.J. Super. 513 (1973)
303 A.2d 626
STATE OF NEW JERSEY, PLAINTIFF,
v.
JAMES J. McCARTHY, JR., DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division  Criminal.
Decided April 6, 1973.
*515 Mr. James Fagan, Assistant Prosecutor of Essex County, for plaintiff (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
Mr. Joseph E. Fund for defendant.
Mr. David S. Baime, Deputy Attorney General, for Mr. George F. Kugler, Jr., Attorney General of New Jersey, amicus curiae (Mr. Alfred J. Luciani on the brief).
ANTELL, J.C.C.
On this motion to suppress the results of a Breathalyzer test in a drunken driving prosecution, N.J.S.A. 39:4-50, the defendant's claim of invalidity rests upon the assertion that his prior arrest without a warrant was illegal because performed by a police officer who was then acting outside the territorial limits of the municipality where he held his appointment and where the offense occurred.
*516 Because of the state-wide significance of the question presented  which has not been previously decided by a New Jersey court  and in the interest of achieving uniformity in the administration of pertinent legal principles, the Attorney General of New Jersey has filed a brief amicus curiae.
Officer Fichter, of the Cedar Grove Police Department, saw defendant pass a red light on Bradford Avenue at its intersection with Ridge Road. The officer followed him west on Bradford Avenue to a red light on Pompton Avenue, where they stopped. Along the way he observed the defendant cross back and forth for no apparent reason over the double yellow lines on the surface of the roadway. The car continued to Grove Avenue where it turned left toward Verona and again crossed the double yellow lines on the surface of that highway. The events so far recounted occurred within the limits of Cedar Grove. Near the Verona-Cedar Grove line the officer turned on his dome light and siren and pursued defendant for about a mile to Ann Street in Verona. There defendant stopped and was interrogated. His appearance, breath odor, conduct and manner of performing coordination tests led the officer to suspect alcoholic intoxication, and defendant was thereupon arrested and returned to Cedar Grove where the Breathalyzer test was taken.
The reason given by the officer for not acting sooner was that he elected to observe further the manner in which defendant was driving.
In State v. Harbatuk, 95 N.J. Super. 54 (App. Div. 1967), the precise question was raised in an identical context, but the appeal was decided on other grounds. The opinion leaves no doubt, however, that the breath test taken pursuant to N.J.S.A. 39:4-50.2 and 50.3 constitutes a search of the person, and its validity depends upon the lawfulness of the preceding arrest. (At 59). See also, State v. Swiderski, 94 N.J. Super. 14, 24 (App. Div. 1967).
*517 That the official powers of a municipal police officer are ordinarily viable only within the territorial limits of the municipality which he serves is made plain by N.J.S.A. 40A:14-152, which creates these powers in the following language:
The members and officers of a police department and force, within the territorial limits of the municipality, shall have all the powers of peace officers and upon view may apprehend and arrest any disorderly person or any person committing a breach of the peace. Said members and officers shall have the power to serve and execute process issuing out of the courts having local criminal jurisdiction in the municipality and shall have the powers of a constable in all matters other than in civil causes arising in such courts.
Also see, 5 Am. Jur.2d, Arrest, § 50 at 742; 62 C.J.S. Municipal Corporations § 574 at 1108; 6 C.J.S. Arrest § 12 at 610.
But the policeman's power to arrest without a warrant is by no means invariably confined by the "territorial limits" condition. In addition to his official powers, he may also exercise those which he enjoys in common with any private citizen. 5 Am. Jur. 2d Arrest, § 50 at 742. At common law a citizen could arrest without a warrant only where a felony was provable. Brown v. State, 62 N.J.L. 666, 695 (E. & A. 1898), aff'd 175 U.S. 172, 20 S.Ct. 77, 44 L.Ed. 119 (1899). N.J.S.A. 2A:169-3 has broadened this. This statute, extant since 1898 (L. 1898, c. 239, § 36, p. 953), allows any person to
* * * apprehend without warrant or process any disorderly person, and take him before any magistrate of the county where apprehended.
The only limitation of this provision is that the arrestee be taken before "any magistrate of the county where apprehended" (emphasis added), obviously contemplating that arrests would be made in counties and in municipalities other than where the offense occurred. Since the arrest powers of a policeman are coextensive with those of a private *518 citizen, and since this statute vests in the latter a right of warrantless arrest for disorderly conduct without limitation by territorial considerations, it follows that at least to this extent the policeman's powers are broadened beyond those fixed by N.J.S.A. 40A:14-152. Although drunken driving violations do not now occupy the status of disorderly conduct, such was their original classification. L. 1913, c. 67. In 1921 what we now know as the Motor Vehicle Act was adopted, and drunken driving was transferred into its provisions from those of the Disorderly Persons Act. L. 1921, c. 208. Contained in § 31 thereof was the forerunner of N.J.S.A. 39:5-25, which now provides, as it has in substance over the years:
Any constable, police officer, peace officer, motor vehicle inspector or the director may, without a warrant, arrest any person violating in his presence any provision of chapter three of this Title (39:3-1 et seq.), or any person, other than a motorman or person having control of a street car or auto bus, running upon a route approved by the Board of Public Utility Commissioners, violating in his presence any provision of chapter four of this Title (39:4-1 et seq.). The exemption from arrest of a motorman or person having control of a street car or auto bus, as conferred herein, shall not operate to prevent his arrest, however, for a violation of section 39:4-50 of this Title. The arresting officer shall bring any person so arrested before any magistrate of the county wherein the offense is committed, or before the director at any place designated as his office. [Emphasis added]
That this statute contemplates arrests without warrant outside the municipal and county limits where the offense occurred appears from the fact that the only duty imposed upon the arresting official is that he bring the offender before "any magistrate of the county wherein the offense is committed, or before the director at any place designated as his office" (emphasis added). Yet, like N.J.S.A. 2A:169-3, it avoids any territorial constriction upon the authority to arrest.
Having disregarded entirely the role of local boundaries in defining the jurisdictional basis of the arrest, what reason *519 is there to believe that the framers, merely by transferring the drunken driving proscription from the Disorderly Persons Act to the then newly enacted Motor Vehicle Act, intended to cramp its enforcement by anchoring a policeman's power of immediate arrest to the capricious circumstance of whether he is in the employ of one or another political subdivision of the State? The law is one which involves moving vehicles and rapid shifts of situs from one locality to another, with undiminished risks of harm to the public. Although time lost to secure a warrant in most motor vehicle cases is no detriment to the prosecution, it is otherwise in drunken driving cases where the law enforcement agent is in a race against the vanishing alcoholic content of the driver's blood. The enactment of N.J.S.A. 39:5-25, authorizing arrests without reference to local jurisdictional limits, was a suitable legislative response to the mobile character of this threat to the public safety, its clear lack of relationship to any intrastate governmental geography, and the necessity for prompt police action.
Every community shares a unitary interest in the prompt apprehension of offenders so that the highly perishable evidence of their misconduct be reliably secured. Extra-territorial arrests of this nature involve neither offense to the sovereignty of any municipality nor the constitutional liberties of the individual. These considerations militate strongly against the conclusion that the policeman's power of arrest for this offense as disorderly conduct was not intended to survive the statutory reorganization of 1921.
Although one departure from existing law, which was evidently intended by declassifying the offense as disorderly conduct and the enactment of N.J.S.A. 39:5-25, was to withdraw from private citizens the power of arrest without warrant in drunken driving cases, I do not conclude from this that it was also intended to discontinue the long standing correlation between the right to arrest anywhere without a warrant for disorderly conduct committed in one's presence and enforcement of the prohibition against drunken driving. *520 However, at least one other court has taken a contrary view in a closely comparable setting. See State v. Hodgson, 200 A.2d 567 (Del. Super. Ct. 1964).
Relevant also is the following provision of the Uniform Act on Intrastate Fresh Pursuit, N.J.S.A. 2A:156-1:
Any peace officer of this state in fresh pursuit of a person who is reasonably believed by him to have committed a high misdemeanor in this state or has committed, or attempted to commit, any criminal offense in this state in the presence of such officer, or for whom such officer holds a warrant of arrest for a criminal offense, shall have the authority to arrest and hold in custody such person anywhere in this state. [Emphasis added]
If applicable, this statute validates the arrest. But the question arises as to whether by the use of "any criminal offense" the Legislature intended to limit the right of fresh pursuit to cases involving indictable offenses, or whether the term was used in a looser sense which would allow for the inclusion of lesser punishable offenses. Recognizing that drunken driving is a petty offense not subject to prosecution by indictment, State v. Macuk, 57 N.J. 1, 9 (1970), so also is disorderly conduct. N.J.S.A. 2A:169-4. Yet, as to the latter, as we have observed, no territorial contingencies abridge the citizens' right to arrest without warrant for violations occurring in their presence. N.J.S.A. 2A:169-3.
Are there reasonable grounds to believe that the Legislature intended to differentiate between the two forms of petty offenses? Did the Legislature really intend, by the use of "any criminal offense," that in drunken driving violations, which threaten grievous public harm and are subject to maximum penalties of up to $1,000 in fines, three months imprisonment and revocation of driving privileges for up to ten years, a pursuing policeman could do no more than rail helplessly at a fleeing offender once the sanctuary of a neighboring hamlet had been reached? If so, it is impossible to reconcile this intention on any reasonable hypothesis with the strikingly greater powers allowed under N.J.S.A. *521 2A:169-3, whereby arrests may be made anywhere for such disorderly conduct as smoking in a bus or trolley (§ 65, maximum penalty $25 fine), spitting (§ 10, maximum penalty $25 fine), furnishing cigarettes to a minor (§ 51, maximum fine $100), trespassing (§ 31, maximum penalty $50), drinking at athletic contests (§ 25.3, maximum penalty 30 days and $50 fine), possession of alcoholic beverages by person under 21 in a public place, (§ 54.1, maximum penalty 30 days and $50 fine), and fortune telling (§ 7). It also appears that one who drops trash on a public highway from a motor vehicle in one town may be arrested in another for so doing. § 67.1. Indeed, even the offense of driving a mule while intoxicated could result in such arrests until the repeal of § 13 from the Disorderly Persons Act. L. 1971, c. 98, § 1.
The sense of a law is to be gathered from its object and the nature of the subject matter, the contextual setting, the history of the legislation, and other statutes in pari materia. Statutes upon cognate subjects may be considered in arriving at the legislative intention, though not strictly in pari materia. This principle is essential to give unity to the laws and to connect them in a symmetrical system. The import of any word or phrase is to be gleaned from the context and statutes in pari materia. Scholastic strictness cannot be adopted if it prevents a reasonable construction. State v. Brown, 22 N.J. 405, 415-416 (1956); Watson v. Jaffe, 121 N.J. Super. 213, 214 (App. Div. 1972); State v. Federanko, 26 N.J. 119, 129-130 (1958).
The legislative mind is presumed to be consistent, and the statutes should be construed to the end that their respective provisions will be consistent one with the other, thus giving effect to the true meaning, intent and purpose of the legislation as a whole. [Gannon v. Saddle Brook Tp., 56 N.J. Super. 76, 80 (App. Div. 1959), certif. den. 30 N.J. 559 (1959)]
In gathering the legislative intent from the comprehensive statutory expression we are guided by the judicial *522 stricture that interpretations which lead to absurd and anomalous results are to be avoided. So far as the terms of legislation and proper consideration of the interests of those subject to it will permit, the statutory objective is to be fulfilled. State v. Gill, 47 N.J. 441, 444 (1966); Robson v. Rodriquez, 26 N.J. 517, 528 (1958); State v. Provenzano, 34 N.J. 318, 322 (1961). In light thereof the conclusion is forced upon us that by the use of the phrase "any criminal offense" in the Fresh Pursuit Act the Legislature intended either to encompass lesser offenses under the Motor Vehicle Act or, if not, acted upon its understanding that the power to execute warrantless arrests in drunken driving cases outside the territorial limits of their municipal jurisdictions had already been conferred upon municipal policemen by N.J.S.A. 39:5-25, as it had in the case of disorderly conduct by N.J.S.A. 2A:169-3. The bizarre distinctions in the powers of arrest authorized for such motor vehicle offenses and those for other lesser offenses which are postulated by a contrary interpretation could not have been intended.
Our analysis of the relevant statutory relationships and the issues of public policy presented precludes us from believing that implementation of this vitally important penal enactment, touching so closely upon the public safety and welfare, was meant to be frustrated by so facile an expedient as simply making it to the town line.
Finally, we note the pertinent holding and the principles applied in State v. Gillespie, 100 N.J. Super. 71 (App. Div. 1967), certif. den. 51 N.J. 274 (1968). There, as here, on appeal from a drunken driving conviction defendant argued that evidence of his intoxication was seized as the result of an arrest by a policeman without a warrant which was illegal for failure of the offense to have taken place "in his presence," a condition which is mandated by N.J.S.A. 39:5-25 as a prerequisite to such an arrest. Although agreeing that the evidence seized was the product of an illegal *523 seizure of defendant's person, the court reasoned (at 85) in the following language as to why this "technical invalidity" did not warrant suppression of the evidence.
* * * the subsequent enforced subjection of the defendant to examination for intoxication was justified as an emergency measure to assure the State against loss of evidence of defendant's guilt of an offense which, although not graded a crime, is of a kind which poses an extremely grave menace to the public safety and welfare.
Had the police officer refrained from immediate apprehension and subjection of defendant to physical examination, in order to accommodate the requirement that he first procure an arrest warrant, defendant might have absented himself until a time when his symptoms of inebriation were gone or had become minimal.
These considerations are no less applicable here.
It therefore follows that even lacking the support of N.J.S.A. 39:5-25 and N.J.S.A. 2A:156-1, the Fresh Pursuit Act, for the allowance of arrests without a warrant for motor vehicle violations by municipal police officers outside the physical limits of the municipality where they hold office, the arrest of the defendant under the circumstances here presented would nevertheless be justified as an emergency measure.
Motion denied.