776 P.2d 1252

**The INCORPORATED COUNTY OF LOS ALAMOS, New Mexico, Petitioner,**

v.

**Donald R. JOHNSON, Respondent.**

No. 18298.

Supreme Court of New Mexico.

June 27, 1989.

Rehearing Denied Aug. 8, 1989.

Byron L. Treaster, Associate County Atty., Los Alamos, for County of Los Alamos.

P. Reid Griffin, Jr., Los Alamos, for respondent.

## OPINION

SCARBOROUGH, Justice.

Sometime after midnight on July 18, 1986, a uniformed officer of the Los Alamos Police Department observed Johnson driving in an erratic manner. The police officer suspected Johnson was DWI and elected to make a traffic stop. The police officer turned on his emergency lights, and at first it appeared Johnson would pull over and stop at a point approximately one-half mile from the Los Alamos–Santa Fe County Line. Johnson, however, did not pull over but continued to drive for a distance of approximately one mile after the police officer turned on his emergency lights. Johnson finally pulled over and stopped at a point approximately one-half mile beyond the county line, in Santa Fe County. The police officer determined that Johnson was DWI and arrested him. Johnson consented to a blood alcohol test which revealed his blood contained a .10 percent alcohol by weight. Johnson was found guilty of DWI by the Los Alamos Municipal Court and appealed for de novo review by the district court.

Johnson argued on appeal to the district court that the arresting officer had no authority to arrest him in Santa Fe County under NMSA 1978, Section 31–2–8 (Repl. Pamp.1984) of the Fresh Pursuit Act. After a non jury trial, the district court upheld the verdict rendered by the municipal court. Johnson appealed to the court of appeals which reversed the district court. We reverse the court of appeals.

The issue we are asked to address on certiorari is whether Section 31–2–8 of the Fresh Pursuit Act authorizes a municipal police officer to make an extraterritorial arrest for DWI. We find that it does.

When interpreting a statute we seek to determine and give effect to the legislative intent. *Smith Mach. Corp. v.*

*Hesston, Inc.,* 102 N.M. 245, 694 P.2d 501 (1985). The provisions of a statute must be read together with other statutes *in pari materia* to ascertain legislative intent. *Quintana v. New Mexico Dep't of Corrections,* 100 N.M. 224, 668 P.2d 1101 (1983), *rev'd on other grounds, Devine v. New Mexico Dep't of Corrections,* 866 F.2d 339 (10th Cir.1989). We presume that the legislature is well informed as to existing statutory and common law and does not intend to enact a nullity, and we also presume that the legislature intends to change existing law when it enacts a new statute. *State ex rel. Bird v. Apodaca,* 91 N.M. 279, 284, 573 P.2d 213, 218 (1977). When several statutes relate to the same subject matter, we will, if possible, construe them in such a fashion as to give effect to every provision of each. *First Nat'l Bank v. Southwest Yacht & Marine Supply Corp.,* 101 N.M. 431, 436, 684 P.2d 517, 522 (1984). While normally bound to follow legislative definitions, we are not so bound when a particular definition would result in an unreasonable classification. 1A, N. Singer, *Sutherland Statutory Construction,* § 20.08 (4th ed. 1985). In such a case, we look to the intent of the language employed by the legislature rather than to the precise definition of the words themselves. *State v. Nance,* 77 N.M. 39, 45-6, 419 P.2d 242, 248-49 (1966), *cert. denied,* 386 U.S. 1039, 87 S.Ct. 1495, 18 L.Ed.2d 605 (1967). Finally, we seek to adopt a construction which will not render an application of the statute absurd or unreasonable. *State v. Nance,* 77 N.M. at 46, 419 P.2d at 249.

■ Johnson argues on appeal that municipal police officers are not empowered to make extraterritorial DWI arrests because a DWI arrest under a local DWI ordinance carries only "petty misdemeanor" penalties rather than "misdemeanor" penalties, as required by Section 31-2-8 of the Fresh Pursuit Act. At the time Johnson was arrested, the Municipal Code provided that municipalities could enforce local ordinances by imposing penalties comparable to "petty misdemeanor" penalties. NMSA 1978, § 3-17-1(C) (Repl.Pamp.1985) (fines not exceeding $300 or imprisonment not exceeding ninety days or both); *see also* NMSA 1978, § 31-1-2(K) (Repl.Pamp.1984) of the Criminal Procedure Act ("misdemeanor" penalty is imprisonment in excess of six months but less than one year) and § 31-1-2(L) ("petty misdemeanor" penalty is imprisonment for six months or less). We do not adopt this constrictive reading of the Fresh Pursuit Act.

Over a decade ago, this Court recognized the common law doctrine that allows police officers to pursue and arrest a suspected felon beyond the boundaries of their jurisdiction. *Benally v. Marcum,* 89 N.M. 463, 553 P.2d 1270 (1976). When the legislature passed Section 31-2-8 authorizing the fresh pursuit and extraterritorial arrests of misdemeanants, we assume they were aware of the existing common law regarding fresh pursuit of felons and of "petty misdemeanor" and "misdemeanor" definitions in the Criminal Procedure Act and the penalty provisions for DWI convictions in NMSA 1978, Section 66-8-102(D) and (E) (Supp.1988) of the Motor Vehicle Code. We believe the legislature intended in Section 31-2-8 to expand the fresh pursuit and extraterritorial arrest powers of county sheriffs and municipal police officers and that this expansion power included the authority for fresh pursuit and extraterritorial arrest of DWI suspects.

We recognize the public policy of removing DWI drivers from New Mexico roads in order to protect the public, and have previously termed the offense of DWI a "misdemeanor." *Boone v. State,* 105 N.M. 223, 731 P.2d 366 (1986); *State v. Manzanares,* 100 N.M. 621, 674 P.2d 511 (1983), *cert. denied,* 471 U.S. 1057, 105 S.Ct. 2123, 85 L.Ed.2d 487. To adopt the reading of the Fresh Pursuit Act based upon an exercise in semantics as urged by *Johnson* would eviscerate the Act as it pertains to pursuit of DWI suspects. In addition to preventing fresh pursuit of DWI suspects by municipal police officers, Johnson's interpretation would also unacceptably restrict the

pursuit of DWI suspects by county sheriffs. Section 66–8–102(D) authorizes a sentence of not more than ninety days for a first conviction for DWI, which would fall within the "petty misdemeanor" definition in the Criminal Procedure Act. Section 66–8–102(E) authorizes sentences for second or subsequent DWI convictions which would fall within the "misdemeanor" definition. A peace officer in fresh pursuit of a DWI suspect, however, would have no way of determining whether a first, second or subsequent DWI conviction could result.

The Court of Appeals is reversed, and the judgment of the district court in the Johnson cause is reinstated.

IT IS SO ORDERED.

RANSOM, J., concurs.

BACA, J., files a specially concurring opinion in which RANSOM, J., joins.

SOSA, C.J., dissents.

BACA, Justice (specially concurring).

I concur in the majority result but would add to the reasoning found in the discussion of fresh pursuit.

I first note that in *Benally v. Marcum*, 89 N.M. 463, 553 P.2d 1270 (1976), we recognized that the common law doctrine of fresh pursuit allowed police officers to pursue and arrest suspected felons beyond the territorial boundaries of their jurisdiction. 89 N.M. at 466, 553 P.2d at 1273. In response to this limited common law doctrine allowing police officers to only pursue felons and not misdemeanants, the legislature, in 1981, enacted an act relating to law enforcement, allowing fresh pursuit of a misdemeanant across intrastate jurisdictional lines. 1981 N.M.Laws, ch. 102, § 1 (codified at NMSA 1978, § 31–2–8 (Repl. Pamp.1984)). Section 31–2–8(A) and (B) provides in pertinent part:

A. Any county sheriff or municipal police officer who leaves his jurisdictional boundary while in fresh pursuit of a misdemeanant whom he would otherwise have authority to arrest shall have the authority to arrest that misdemeanant anywhere within this state and return him to the jurisdiction in which the fresh pursuit began without further judicial process.

B. For purposes of this section, "fresh pursuit of a misdemeanant" means the pursuit of a person who has committed a misdemeanor · in the presence of the pursuing officer. Fresh pursuit shall not necessarily imply instant pursuit, but pursuit without unreasonable delay.

In my view, the critical issue in this case is whether the generic term "misdemeanor" in Section 31–2–8(B) includes "petty misdemeanors," allowing police officers to make extraterritorial arrests for DWI, an offense carrying "petty misdemeanor" penalties. I believe it does. I note that the criminal law evolved over several centuries in England creating three classifications of crimes: treasons, felonies, and misdemeanors. *Hoffman v. People*, 72 Colo. 552, 555, 212 P. 848, 851 (1923); W. LaFave & A. Scott, Jr., *Criminal Law* § 6 (1972) (hereinafter LaFave). At common law, all offenses other than treasons or felonies, were misdemeanors. *State v. Kelly*, 218 Minn. 247, 257, 15 N.W.2d 554, 564 (1944); *State v. O'Shields*, 163 S.C. 408, 410, 161 S.E. 692, 694 (1931); 1 C. Torcia, *Wharton's Criminal Law* § 20 (14th ed. 1978). Codification of the criminal law occurred in the United States to subdivide felonies and misdemeanors into classes for purposes of defining levels of punishment. *See State v. Pontier*, 95 Idaho 707, 715, 518 P.2d 969, 977 (1974); R. Perkins, *Criminal Law* § 1 (2d ed. 1969). In New Mexico felonies are subdivided into degrees. NMSA 1978, § 30–1–7 (Repl.Pamp.1984). A misdemeanor may be either a major crime or a petty offense/misdemeanor depending on the possible level of punishment. *See Fimara v. Garner*, 86 Conn. 434, 436, 85 A. 670, 672 (1913); LaFave at § 6. Generally, petty offenses/misdemeanors are *subgroups of misdemeanors*. *Fimara v. Garner*, 86

Conn. at 436, 85 A. at 672 (dividing misdemeanors into two *grades:* serious and petty misdemeanors). *See State v. Berg,* 237 Iowa 356, 357, 21 N.W.2d 777, 778 (1946); *Commonwealth v. Cano,* 389 Pa. 639, 645, 133 A.2d 800, 806, *cert. denied,* 355 U.S. 182, 78 S.Ct. 267, 2 L.Ed.2d 186 (1957). *See also* 18 U.S.C. § 1 (1982); LaFave at § 6.

I believe the legislature was aware of the statutory criminal law trend to subdivide felonies and misdemeanors into distinct categories. I further believe that the legislature did not intend to supplant this trend. Therefore, as it follows that the generic term "felony" is subdivided into degrees, it also would logically follow that the generic term "misdemeanor" in Section 31–2–8(B) includes "petty misdemeanors" as it historically always has. Thus, Section 31–2–8 of the Fresh Pursuit Act allows county sheriffs or municipal police officers to make an extraterritorial arrest for a DWI offense carrying "petty misdemeanor" penalties.

SOSA, Chief Justice (dissenting).

I hereby adopt as my dissent the majority opinion of the court of appeals as appended herein in full.

APPENDIX

OPINION

ALARID, Judge.

Defendant appeals his conviction for driving while intoxicated (DWI), claiming the arresting Los Alamos police officer had no authority to stop and arrest defendant in Santa Fe County because: (1) DWI is not a "misdemeanor" under the Uniform Act on Fresh Pursuit (Act), NMSA 1978, Sections 31–2–1 to 31–2–7 (Repl.Pamp.1984), or NMSA 1978, Section 31–2–8 (Repl.Pamp. 1984), and (2) pursuit into Santa Fe County was not justified as an emergency measure or as a citizen's arrest. We agree, and reverse and remand.

FACTS

A uniformed Los Alamos police officer, driving a marked patrol unit, observed defendant driving his vehicle within Los Alamos County. Following defendant for several miles, the officer observed defendant make an improper left turn, touch or straddle the white side line of the road, and touch or straddle the yellow center line of the highway. The officer then attempted to stop defendant's vehicle while still in Los Alamos County but did not effect the stop until defendant entered Santa Fe County.

After the stop, the officer asked defendant to submit to a field sobriety test, subsequently arresting defendant in Santa Fe County for DWI in Los Alamos County. Defendant also submitted to a breath-alcohol test which determined his blood contained .10 alcohol by weight.

In Los Alamos Municipal Court, pursuant to a Los Alamos municipal ordinance, defendant was convicted of DWI. On appeal, the district court concluded the arrest of defendant in Santa Fe County, by an officer acting for Los Alamos County, was proper pursuant to Section 31–2–8, and found defendant guilty of DWI.

DISCUSSION

1. THE MEANING OF "MISDEMEANOR" IN THE ACT.

Section 31–2–8 provides:

A. Any county sheriff or municipal police officer who leaves his jurisdictional boundary while in fresh pursuit of a misdemeanant whom he would otherwise have authority to arrest shall have the authority to arrest that misdemeanant anywhere within this state and return him to the jurisdiction in which the fresh pursuit began without further judicial process.

B. For purposes of this section, "fresh pursuit of a misdemeanant" means the pursuit of a person who has committed a *misdemeanor* in the presence of the pursuing officer.... [Emphasis added.]

NMSA 1987, Section 31–1–2 (Repl.Pamp. 1984), provides:

Unless a specific meaning is given, as used in the Criminal Procedure Act [31–1–1 to 31–3–9 NMSA 1978]:

. . . .

K. "misdemeanor" means any offense for which the authorized penalty upon conviction is imprisonment in excess of six months but less than one year: and

L. "petty misdemeanor" means any offense so designated by law or if upon conviction a sentence of imprisonment for six months or less is authorized.

The parties do not dispute that the crime of DWI is a petty misdemeanor under the definitions of Section 31–1–2. *See* NMSA 1978. § 66–8–7 (Repl.Pamp.1987) and § 66–8–102 (Supp.1988). Defendant argues that Section 31–2–8 authorizes a police officer to arrest outside his jurisdictional boundaries when a person has committed a misdemeanor, as defined pursuant to Section 31–1–2(K), in the presence of the officer and while the officer is in fresh pursuit of that person. Defendant concludes that the officer had no authority to arrest him pursuant to Section 31–2–8, since under the Act DWI is a petty misdemeanor rather than a misdemeanor.

Los Alamos County (county) contends that "fresh pursuit of a misdemeanant," as used in Section 31–2–8, refers to pursuit of persons committing both "petty misdemeanors" and "misdemeanors" as defined in Section 31–1–2. Arguing absurdity results if "misdemeanant" is interpreted in any other manner, the county notes that any pursuit across jurisdictional boundaries to enforce local ordinances prohibiting DWI would be unauthorized, and suspects would be immune from arrest by a pursuing local police officer once they crossed a county or city line.

While we recognize and appreciate the county's concerns, we are not inclined to ignore the clear language of Section 31–2–8. Legislative intent is to be determined primarily by the language of the statute, and words will be given their plain and ordinary meaning unless a different intent is clearly indicated. *State v. Pedroncelli*, 100 N.M. 678, 675 P.2d 127 (1984).

Section 31–2–8(B) specifically states the meaning of the phrase "fresh pursuit of a misdemeanant." Under subsection B, the legislature has limited fresh pursuit of misdemeanants to "pursuit of a person who has committed a misdemeanor in the presence of the pursuing officer." The legislature made no reference to pursuit of a person committing a petty misdemeanor. Section 31–1–2 states that, unless a specific meaning is given, the definitions therein are applicable to the Act. No specific meaning of "misdemeanor" is given in Section 31–2–8: therefore, the definitions of Section 31–1–2 apply.

We commend to the legislature the question of whether the Act should be amended to include pursuit of DWI suspects in the future. In so doing, we note DWI has repeatedly been characterized by our courts as a "misdemeanor." *See Boone v. State*, 105 N.M. 223, 731 P.2d 366 (1986); *State v. Manzanares*, 100 N.M. 621, 674 P.2d 511 (1983), *cert. denied*, 471 U.S. 1057, 105 S.Ct. 2123, 85 L.Ed.2d 487 *reh'g denied*, 472 U.S. 1013, 105 S.Ct. 2715, 86 L.Ed.2d 729 (1985); *State v. Calanche*, 91 N.M. 390, 574 P.2d 1018 (Ct.App.1978). Moreover, Section 66–8–7 states that it is a "misdemeanor" for any person to violate any provisions of the Motor Vehicle Code, and DWI is an offense under the provisions of the Code. *See* § 66–8–102. However, for the purposes of Section 31–2–8, DWI is a petty misdemeanor, and the statute does not permit fresh pursuit except for a misdemeanor as defined by Section 31–1–2(K).

2. **WHETHER PURSUIT WAS JUSTIFIED AS AN EMERGENCY MEASURE OR A CITIZEN'S ARREST.**

The county offers authority from other jurisdictions recognizing the right of police, acting without statutory authority, to engage in fresh pursuit of DWI offenders. Citing *State v. McCarthy*, 123 N.J.Super. 513, 303 A.2d 626 (Law Div.1973), the county suggests the officer's pursuit across the county line be justified as an emergency measure. We do not see the evidence be-

fore us as sufficient to justify the officer's pursuit as an emergency measure. Prior to stopping defendant, the officer observed only minor traffic violations. There is no evidence indicating defendant's driving was so erratic as to lead the officer to believe defendant presented a threat or menace to the general public. *See id.*

Alternatively, the county urges we validate the officer's pursuit and subsequent stop of defendant as a citizen's arrest. *See State v. Sellers,* 350 N.W.2d 460 (Minn.Ct. App.1984). Historically, a citizen's power to arrest in New Mexico has extended only to felonies. *See State v. Barreras,* 64 N.M. 300, 328 P.2d 74 (1958); *Territory v. McGinniss,* 10 N.M. 269, 61 P. 208 (1900), *overruled on other grounds. State v. Deltenre,* 77 N.M. 497, 424 P.2d 782 (1966), *cert. denied,* 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967). More recently, this court has noted that at common law a citizen was privileged to arrest for a breach of the peace committed in his presence. *Downs v. Garay,* 106 N.M. 321, 742 P.2d 533 (Ct.App.1987). Our courts have also recognized DWI as an offense involving a breach of the peace in order to allow justices of the peace jurisdiction to hear such complaints. *State v. Rue,* 72 N.M. 212, 382 P.2d 697 (1963). We do not read the holdings in *Rue* and *Downs* as recognition of common law power in citizens of New Mexico to arrest for traffic offenses such as DWI, and we decline to do so here for two reasons.

First, specific to the facts of this case, the legislature has addressed the question of the authority of police officers acting out of their jurisdiction in the Act. We believe it is improper to circumvent the clear language of Section 31–2–8 by characterizing an officer's actions as a citizen's arrest in every instance of pursuit which goes beyond the authority conferred by the Act. To hold otherwise would render Section 31–2–8 useless. *See State ex rel. Bird v. Apodaca,* 91 N.M. 279, 573 P.2d 213 (1977).

Moreover, we will not employ common law citizen's arrest powers as a vehicle to broaden the authority of police officers acting beyond their jurisdiction, because we envision such a holding as potentially creating problems more numerous and onerous than those arising from the question we decide today. As the court stated in *Commonwealth v. Grise,* 398 Mass. 247, 496 N.E.2d 162 (1986), "[s]ince 'breach of the peace' may be construed by laymen as a somewhat elastic concept, empowering private persons to arrest for such misdemeanors might only encourage 'vigilantism and anarchistic actions'." *Id.* at 251, 496 N.E.2d 164–165. Facing a similar question in *Settle v. State,* 679 S.W.2d 310 (Mo.Ct. App.1984), *cert. denied,* 472 U.S. 1007, 105 S.Ct. 2701, 86 L.Ed.2d 717 (1985), the Missouri court questioned the wisdom of authorizing stops and detention by private citizens for ordinance violations or traffic offenses, concluding such a grant of authority "would invite more breaches of the peace than the number hoped to be prevented." *Id.* at 318. We share the concerns expressed by the courts in *Grise* and *Settle* in declining to justify the Los Alamos officer's arrest of defendant as a citizen's arrest. We believe it most appropriate and prudent to leave to the legislature the question of whether the Act should be amended to include pursuit of suspected DWI offenders. *See Garrison v. Safeway Stores,* 102 N.M. 179, 692 P.2d 1328 (Ct. App.1984); *Varos v. Union Oil Co. of Cal.,* 101 N.M. 713, 688 P.2d 31 (Ct.App.1984). We agree with the statement in *Grise,* 398 Mass. at 252, 496 N.E.2d at 165, that there is a

> strong public policy ... against drunk driving, and [a] necessity for removing intoxicated motorists from the roads before they harm themselves or other persons. We also appreciate that these interests might best be served by allowing police officers to apprehend intoxicated motorists outside of the officers' territorial jurisdictions. However, we decline to reach this result through the circuitous route of empowering private per-

sons to arrest for misdemeanors involving a breach of the peace. If the Legislature in its wisdom wishes to broaden the powers of police officers acting outside of their territorial jurisdictions, it may amend [the statute] to accomplish this purpose. [Citation omitted.]

CONCLUSION

Accordingly, the Los Alamos County police officer was without jurisdiction to arrest defendant for a petty misdemeanor in Santa Fe County. Since the evidence was obtained as a result of a violation of defendant's statutory rights, it should have been suppressed. *State v. Wilson*, 92 N.M. 54, 582 P.2d 826 (Ct.App.1978). We reverse and remand for new trial with instructions that all evidence obtained as a result of the illegal stop and arrest be suppressed.

IT IS SO ORDERED.

BIVINS, C.J., concurs.

HARTZ, J., dissents.