2007-NMSC-001

149 P.3d 933

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Charles MAESTAS, Defendant–Petitioner.**

No. 29,178.

Supreme Court of New Mexico.

Dec. 13, 2006.

Downing & Henderson, P.C., C. David Henderson Santa Fe, NM, for Petitioner.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Jacqueline R. Medina, Assistant Attorney General, Santa Fe, NM, for Respondent.

## OPINION

CHÁVEZ, Justice.

{1} Defendant, a municipal judge, was convicted of five felony counts of official acts prohibited in violation of the New Mexico Governmental Conduct Act, NMSA 1978, § 10–16–3(D) (1993), and five counts of criminal sexual penetration during the commission of the felony of violating official acts prohibited, NMSA 1978, § 30–9–11(D)(5) (2003). The Governmental Conduct Act prohibits legislators and public officers from requesting or receiving something of value in exchange for the promised performance by the public officer of an official act. Section 10–16–3(D). Defendant's convictions arose out of six sexual encounters between Defendant and a woman who was a criminal defendant in Defendant's courtroom. Defendant contends the encounters were purely consensual and at the suggestion of the woman. The State contends Defendant requested the woman perform sexual favors in exchange for leniency or under the threat of harsher punishment which could have resulted in her not seeing her children.

{2} In an impressive display of professionalism and strict adherence to prosecutorial integrity to see that a defendant has a fair trial and that justice is done, Assistant Attorney General Arthur Pepin, in a supplemental brief to this Court, raised an issue not previously raised by any attorney in this case: whether Defendant in his capacity as a judge is subject to the crimes enumerated in the Governmental Conduct Act. The issue arises because the Act expressly excludes judges from the definition of public officer. NMSA 1978, § 10–16–2(G) (1993). Applying the plain meaning rule and mindful of the statutory construction rule that prohibits courts from questioning the wisdom of legislation, *see U.S. Xpress, Inc. v. N.M. Taxation & Revenue Dep't*, 2006–NMSC–017, ¶ 11, 139 N.M. 589, 136 P.3d 999, we conclude that the legislature expressly chose to exclude judges from application of the Governmental Conduct Act. Therefore, Defendant could not be convicted of violating official acts prohibited under Section 10–16–3(D), and violating official acts prohibited could not be used as the predicate felony to support Defendant's conviction of criminal sexual penetration during the commission of a felony. Accordingly, we hold that it was fundamental error to convict Defendant under the Governmental Conduct Act and, therefore, reverse all of Defendant's convictions.

## I. FACTS

{3} Both the State and Defendant interpret the pertinent facts of this case differently. What is undisputed is that Defendant, while a municipal court judge, on several occasions accepted sexual favors from a female who was a criminal defendant in his court. At trial, Defendant contended that the sexual encounters were entirely consensual, but that the woman and her boyfriend concocted a scheme to set up Defendant so that she could bring a civil rights lawsuit against the municipality where Defendant served as a municipal judge. Defendant asserted that the scheme involved the woman seducing Defendant, then claiming that Defendant coerced her into sex. Defendant argued that as part of the alleged scheme, the woman secretly tape recorded one of the sexual encounters.

{4} In contrast, the State argued that the woman was forced into performing sexual favors so that Defendant would lower her traffic fines, keep her out of jail, and not separate her from her children. The woman testified that after she appeared in Defendant's courtroom regarding traffic citations, Defendant requested her to engage in sexual acts with him in exchange for Defendant lowering her fines and keeping her from serving up to ninety days in jail. The woman further testified that she initially denied Defendant's requests, but that Defendant then threatened her that if she did not comply, he would not lower her fines, which would result in her going to jail, losing her job, and not being able to see her children. She also testified that she believed Defendant had the power to take her children away from her because Defendant was a judge. The State contended that Defendant did not reduce the woman's fines and refused to sentence her, causing her case to be rescheduled fourteen times, so that Defendant could continue to coerce her into performing additional sexual acts. The woman testified that she eventually grew tired of Defendant not following through on his promise to reduce her fines, so she decided to tape record a sexual encounter with Defendant. An investigation into the audiotapes resulted in three more women coming forward with similar allegations against Defendant, although Defendant was acquitted of all of the latter charges.

## II. PROCEDURAL BACKGROUND

{5} Defendant was charged with committing forty-four different crimes, including criminal sexual penetration (CSP) during the commission of a felony, CSP with the use of force or coercion, criminal sexual contact, extortion, violating official acts prohibited, and stalking. The predicate felonies for the charges of CSP during the commission of a felony were extortion and violating official acts prohibited under the Governmental Conduct Act. CSP during the commission of a felony is one of six categories of CSP in the second degree enumerated in the CSP statute. Section 30–9–11(D). The CSP statute makes CSP perpetrated through the use of force or coercion a third degree felony. Section 30–9–11(E). Defendant was only

convicted of five counts of official acts prohibited, and five counts of CSP during the commission of the felony violating official acts prohibited.

{6} Defendant appealed his convictions to the New Mexico Court of Appeals, arguing three grounds for reversal: (1) the trial court erred in failing to instruct the jury that coercion was an essential element of criminal sexual penetration during the commission of a felony, *State v. Maestas*, 2005–NMCA–062, ¶ 13, 137 N.M. 477, 112 P.3d 1134; (2) the trial court erred in admitting certain expert witness testimony, *id.* ¶ 29; (3) the trial court erred in excluding evidence that Defendant's accuser operated a house of prostitution, *id.* ¶ 34. The Court of Appeals affirmed Defendant's convictions, holding that coercion is not an essential element of criminal sexual penetration during the commission of a felony. *Id.* ¶ 26. Additionally, the court held that the trial court did not abuse its discretion either in admitting the State expert's testimony or in excluding the evidence of Defendant's accuser's alleged prostitution. *Id.* ¶¶ 33, 37.

{7} We granted Defendant's petition for certiorari on all three issues. After the parties filed their briefs, the State filed a supplemental brief alerting this Court that the Governmental Conduct Act, under which Defendant was convicted, appeared to expressly exclude judges from prosecution under the Act. *See* § 10–16–2(G). Although Defendant did not preserve this argument, we review the issue under a fundamental error analysis. *See* Rule 12–216(B)(2) NMRA; *State v. Barber*, 2004–NMSC–019, ¶ 8, 135 N.M. 621, 92 P.3d 633 (providing a fundamental error exception to rule preventing review of issues not properly preserved).

## III. FUNDAMENTAL ERROR ANALYSIS

{8} The doctrine of fundamental error is applied only under extraordinary circumstances to prevent the miscarriage of justice. *Barber*, 2004–NMSC–019, ¶ 8, 135 N.M. 621, 92 P.3d 633. The doctrine applies if the circumstances "implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Cunningham*, 2000–NMSC–009, ¶ 21, 128 N.M. 711, 998 P.2d 176. For exam-

ple, if a defendant appears indisputably innocent of the crimes for which he was charged, or where it would shock the conscience to permit the conviction to stand, the convictions may be reversed under a fundamental error analysis. *Id.* ¶ 13.

{9} It is fundamental error to convict a defendant of a crime that does not exist. *State v. Johnson*, 103 N.M. 364, 371, 707 P.2d 1174, 1181 (Ct.App.1985). The question in this case is whether Defendant could lawfully be convicted of violating Section 10–16–3(D) of the Governmental Conduct Act. If not, then his convictions must be reversed under the fundamental error doctrine. In determining whether the Governmental Conduct Act applies to judges, we look first to the words the legislature chose and the plain meaning of that language. *See State v. Davis*, 2003–NMSC–022, ¶ 6, 134 N.M. 172, 74 P.3d 1064. "Under the plain meaning rule[,] statutes are to be given effect as written without room for construction unless the language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction, in which case the statute is to be construed according to its obvious spirit or reason." *Id.* Thus, we look to the plain language of the statute to determine if it is ambiguous, and if not ambiguous, whether following the language would lead to an absurd result.

{10} Section 10–16–3(D) of the Governmental Conduct Act states that "[n]o legislator, public officer or employee may request or receive, and no person may offer a legislator, public officer or employee, any money, thing of value or promise thereof that is conditioned upon or given in exchange for promised performance of an official act." A violation of Section 10–16–3(D) is a fourth degree felony punishable by eighteen months imprisonment. *See* NMSA 1978, § 31–18–15(A)(9) (2005). Because the language of Section 10–16–3(D) does not specifically include judges, we must determine whether a judge is considered to be a "public officer or employee."

{11} The legislature defined "public officer or employee" as "any person who has been elected to, appointed to or hired for any state

office and who receives compensation in the form of salary or is eligible for per diem or mileage, but excludes legislators and judges." Section 10–16–2(G). As persons appointed or elected to office who receive a salary, had the legislature not expressly excluded judges from the public officer or employee definition, judges would clearly be subject to the provisions of the Governmental Conduct Act. Moreover, as discussed below, the legislature could have applied any provision of the Governmental Conduct Act to judges by specifically including the word "judges" within any provision of the Act, similar to how they included legislators. *See* NMSA 1978, §§ 10–16–3(D), –4.1, –6, –9, –11, –14 (1967, as amended through 2003). Nevertheless, the plain meaning of the language indicates that the legislature intended to specifically exclude judges from the definition of public officer and from the Act's application.

{12} Despite the express exclusion of judges in the Act, the State urges us to look beyond the plain meaning of the language, arguing that the Act is ambiguous. The State contends that the ambiguity arises out of the Act's express exclusion of judges and legislators in the general definition of public officer, but inclusion of only legislators within the section of the statute that addresses official acts prohibited. The State theorizes that a legislative oversight resulted in the legislature mistakenly omitting judges when it included legislators in Section 10–16–3(D). The State supports its theory by arguing that excluding judges from the criminal provisions of the Act is against public policy because excluding judges from criminal prosecution under the Governmental Conduct Act would lead to injustice and absurdity.

{13} As to any alleged ambiguity, we disagree with the State that the Governmental Conduct Act is unclear with respect to its application to judges. The statute clearly defines a "public officer or employee" and expressly excludes "judges" from that definition. Section 10–16–2(G). The exclusion of legislators from the definition of "public officer or employee" simply means that a legislator is subject to the provisions of the Act, not as a public officer or employee, but as a legislator. Why the legislature drew such a distinction is not clear. To the extent there is ambiguity, it arises only with respect to

legislators due to the legislature's express exclusion of legislators from the definition of "public officer or employee," and then the inclusion of legislators in official acts prohibited and other sections. *See* §§ 10–16–3,–4.1, –6, –9, –11, –14. However, this inconsistency does not exist with respect to judges since the only mention of judges in the Act is the exclusion of judges in the definitions section. *See* § 10–16–2(G). Indeed, the legislature's selective incorporation of legislators into some sections of the Act indicates that the legislature was aware of how to apply some sections of the Act to only certain categories of public officers or employees. If the legislature wanted some sections of the Act to also apply to judges, it certainly knew how to do so.

{14} Unless ambiguity exists, this Court must adhere to the plain meaning of the language. *Davis*, 2003–NMSC–022, ¶ 6, 134 N.M. 172, 74 P.3d 1064. Our role is to construe statutes as written and we should not second guess the legislature's policy decisions. *See State ex rel. Helman v. Gallegos*, 117 N.M. 346, 352, 871 P.2d 1352, 1358 (1994); *State v. Ortega*, 112 N.M. 554, 564, 817 P.2d 1196, 1206 (1991). We adhere to the principle that " '[a] statute must be read and given effect as it is written by the Legislature, not as the court may think it should be or would have been written if the Legislature had envisaged all the problems and complications which might arise in the course of its administration.' " *Gallegos*, 117 N.M. at 352, 871 P.2d at 1358 (quoting *Perea v. Baca*, 94 N.M. 624, 627, 614 P.2d 541, 544 (1980)).

{15} Interpreting the Governmental Conduct Act to apply to judges would require us to add language to Section 10–16–3(D), official acts prohibited, since the statute only specifically names legislators and public officers or employees. We may only add words to a statute where it is necessary to make the statute conform to the legislature's clear intent, or to prevent the statute from being absurd. *State v. Nance*, 77 N.M. 39, 46, 419 P.2d 242, 247 (1966). If we determine that the legislature clearly intended to apply Section 10–16–3(D) to judges, then this Court may substitute, disregard, eliminate, insert, or add words to a statute. *See Nat'l*

*Council on Comp. Ins. v. N.M. State Corp. Comm'n,* 103 N.M. 707, 708, 712 P.2d 1369, 1370 (1986). As such, any divergence from the plain meaning of a statute must be done in conformity with clear legislative intent.

{16} Although we look to the plain meaning of a statute in determining legislative intent, we agree with the State that we must exercise caution in applying the plain meaning rule. *See Gallegos,* 117 N.M. at 353, 871 P.2d at 1359. If adherence to the plain meaning of a statute would lead to absurdity, we must reject that meaning and construe the statute according to the obvious intent of the legislature. *Nance,* 77 N.M. at 46, 419 P.2d at 247. The State contends that exempting judges from the Governmental Conduct Act would result in absurdity contrary to legislative intent because it would insulate judges from punishment for abuse of power to obtain sex from defendants and urges us to construe Section 10–16–3(D) to include judges. Therefore, in light of the potential that adhering to the plain meaning of the language would result in absurdity, we consider whether the legislature intended to exclude judges from prosecution under Section 10–16–3(D).

{17} In determining whether the legislature intended to exclude judges from Section 10–16–3(D), the legislative history of the Act, including historical amendments, is instructive. *See Davis,* 2003–NMSC–022, ¶ 6, 134 N.M. 172, 74 P.3d 1064. The Governmental Conduct Act was originally titled the Conflict of Interest Act, *see* NMSA 1953, § 5–12–1(1967) (recodified at NMSA 1978, § 10–16–1 (1967)), and was renamed the Governmental Conduct Act in 1993, 1993 N.M. Laws, ch. 46, § 26, at 296. As originally enacted in 1967, the Conflict of Interest Act's definition of "employee," expressly excluded judges. NMSA 1953, § 5–12–2(D) (1967). The definitions section has been amended twice, but even when the legislature specifically amended the definition of "employee" in 1993 to that of "public officer or employee," it chose to keep the judge exclusion. *See* 1993 N.M. Laws, ch. 46, § 27, at 297 (codified at

Section 10–16–2(G)); 1979 N.M. Laws, ch. 350, § 1, at 1446.

{18} Additionally, when the previous version of official acts prohibited (originally titled "Gifts or loans-Request and acceptance") was first enacted, it specifically applied to legislators, but not judges.[1] NMSA 1953, § 5–12–3(A) (1967) (repealed 1993). Furthermore, when the legislature repealed the prior version of official acts prohibited in 1993 and enacted the current version, which included criminal penalties, the legislature again included legislators, but did not add judges to the statute's reach. 1993 N.M. Laws, ch. 46, § 28, at 297–98 (codified at § 10–16–3(D)). This history indicates that when presented with opportunities to eliminate the judge exclusion from the Act, or to add judges to Section 10–16–3(D), official acts prohibited, the legislature has chosen not to do so.

{19} In addition to statutory history, we also consider the context in which the Governmental Conduct Act was enacted to help us determine legislative intent and whether it would be absurd to adhere to the plain language of the Act. *See State v. Cleve,* 1999–NMSC–017, ¶ 8, 127 N.M. 240, 980 P.2d 23. We find it significant that the Governmental Conduct Act was enacted the same year that the Judicial Standards Commission was created. The legislation proposing a constitutional amendment for the creation of the Judicial Standards Commission was introduced during the 1967 legislative session, the same legislative session in which the legislature passed the Governmental Conduct Act. *See* 1967 N.M. Laws 1622–24. On November 7, 1967, New Mexico voters approved the constitutional amendment creating the Judicial Standards Commission. *See* N.M. Const. art. VI, § 32. The purpose of creating the Commission was to provide an independent authority to investigate allegations of judicial misconduct. *State ex rel. N.M. Judicial Standards Comm'n v. Espinosa,* 2003–NMSC–017, ¶¶ 10–11, 134 N.M. 59, 73 P.3d 197. The Judicial Standards Commission is made up of two judicial officers, one

---

1. In relevant part, Section 5–12–3 prevented employees and legislators from requesting or receiving gifts or loans if it "tend[ed] to influence him in the discharge of his official acts." NMSA 1953, § 5–12–3(A)(1)(1967) (repealed 1993).

magistrate, two lawyers, and six lay citizens, N.M. Const. art. VI, § 32 (as amended through 1998), and serves as the watchdog over the judiciary to ensure "an efficient and well disciplined judicial system possessing the highest degree of integrity." *Espinosa,* 2003–NMSC–017, ¶¶ 10–11, 134 N.M. 59, 73 P.3d 197 (quoted authority omitted). The Commission may investigate judicial misconduct, including unethical conduct rising to the level of a criminal infraction, and make recommendations to this Court regarding discipline.[2] N.M. Const. art. VI, § 32.

{20} In addition, when the legislature was contemplating the Governmental Conduct Act, another statute existed for prosecuting judges who accepted or solicited valuable items in exchange for the performance of an official act. *See* NMSA 1978, § 30–24–2 (1963). "Demanding or receiving bribe from public officer or employee," Section 30–24–2, applies to all public officers or employees who solicit or accept anything of value with the intent of having his or her decision or action influenced, and contains no exceptions for judges. *See also* NMSA 1978, § 30–1–12(I) to (J) (defining public officers and employees without including an exclusion for judges); *In re Esquibel,* 113 N.M. 24, 822 P.2d 121 (1992) (per curiam) (finding that disbarment was appropriate after attorney was convicted of violating Section 30–24–2); *State v. Johnson,* 102 N.M. 110, 692 P.2d 35 (Ct.App.1984) (affirming police officer's conviction under Section 30–24–2), *overruled in part on other grounds by Manlove v. Sullivan,* 108 N.M. 471, 775 P.2d 237 (1989). Demanding or receiving a bribe under Section 30–24–2 is a third degree felony and a conviction requires the public employee to forfeit his or her office. Defendant was not charged under Section 30–24–2, although that criminal statute remains in effect today.

{21} We presume that the legislature was aware of Section 30–24–2 when it enacted the Conflict of Interest Act, now the Governmental Conduct Act. *See Inc. County of Los Alamos v. Johnson,* 108 N.M. 633, 634, 776 P.2d 1252, 1253 (1989) ("We presume that the legislature is well informed as to existing statutory and common law . . . ."). The fact that the legislature passed the Conflict of

Interest Act and the legislation approving the creation of the Judicial Standards Commission within the same legislative session, as well as the fact that Section 30–24–2 was in force, provides important context that indicates the legislature's belief that judicial misconduct was sufficiently handled through means other than the Governmental Conduct Act. If warranted, a judge may be prosecuted for judicial misconduct under Section 30–24–2. If judicial misconduct is more in the nature of an ethical violation, then, unlike with any other public official, the Judicial Standards Commission provides a means for the discipline of judges, including removal from office.

{22} The legislative history of the Governmental Conduct Act and the statutory context in which the Act was enacted support a conclusion that the legislature intended to exclude judges from its application. Additionally, our case law demonstrates that we diverge from the plain meaning of a statute to avoid an absurd result only when it is clear that the legislature did not intend such a result. *See, e.g., Compton v. Lytle,* 2003–NMSC–031, 134 N.M. 586, 81 P.3d 39; *County of Los Alamos,* 108 N.M. 633, 776 P.2d 1252. Although we give effect to legislative intent by construing statutes to avoid absurd results, *Compton,* 2003–NMSC–031, ¶ 20, 134 N.M. 586, 81 P.3d 39, " '[w]e must assume the legislature chose [its] words advisedly to express its meaning unless the contrary [intent] clearly appears.' " *Varoz v. N.M. Bd. of Podiatry,* 104 N.M. 454, 456, 722 P.2d 1176, 1178 (1986) (quoting *Weiland v. Vigil,* 90 N.M. 148, 151, 560 P.2d 939, 942 (Ct.App. 1977)); *see also Crooks v. Harrelson,* 282 U.S. 55, 60, 51 S.Ct. 49, 75 L.Ed. 156 (1930) ("[T]here must be something to make plain the intent of Congress that the letter of the statute is not to prevail.").

{23} In *Compton,* we diverged from the plain language of NMSA 1978, Section 33–2–34(A) (1981, repealed 1999), because it was clear that the legislature intended that only inmates convicted of noncapital crimes would receive the benefit of good-time credits. 2003–NMSC–031, ¶ 19, 134 N.M. 586, 81 P.3d

---

2. Under the New Mexico Constitution, this Court possesses the authority to regulate the conduct of

the judiciary and to discipline, remove or retire judges. *See* N.M. Const. art. VI, § 32.

39. Although Section 33–2–34(A) stated that "[a]ny inmate" was eligible for good-time credits, we found that adhering to the plain language would lead to the absurd result of allowing death row inmates to receive credits that would be meaningless once the sentence of death was carried out. *Id.* ¶¶ 19–20. Similarly, in *County of Los Alamos,* we diverged from the plain meaning of the Fresh Pursuit Act, NMSA 1978, § 31–2–8(A) (1981), and held that the clear intent of the legislature was to authorize a municipal police officer to make an extraterritorial arrest for DWI, regardless of whether DWI was classified as a "misdemeanor" or "petty misdemeanor" under a local ordinance. 108 N.M. at 634, 776 P.2d at 1253. We found that adhering to the plain language of Section 31–2–8(A), which only provided for the arrest of a "misdemeanant," would eviscerate the Fresh Pursuit Act as it applied to the pursuit of DWI suspects because officers have no way of determining whether a petty misdemeanor or misdemeanor conviction would result while the officer is in pursuit of a DWI suspect. *Id.* at 634–35, 776 P.2d at 1253–54.

{24} In this case, it is not clear that the legislature intended to include judges in Section 10–16–3(D), official acts prohibited. In fact, we are persuaded by the statutory history and context of the Governmental Conduct Act that the legislature intended to exclude judges from its application. As such, we find that adherence to the plain meaning of the Governmental Conduct Act does not result in absurdity contrary to legislative intent and does not require us to diverge from the plain meaning of the Act. In neither *Compton,* nor *County of Los Alamos,* were we faced with express statutory language excluding an entire class of defendants. Inserting judges into Section 10–16–3(D)'s application requires us to ignore express language the legislature chose to use when it excluded judges from the statute. Absent any evidence that clearly indicates legislative intent to include judges, we find that inserting judges into Section 10–16–3(D) is a far greater leap than we were asked to take in either *Compton* or *County of Los Alamos.* As such, we are bound by the words the legislature chose to use and we must not stray from that language. Therefore, in conformity with the legislature's intent, we hold

that judges are excluded from the application of the Governmental Conduct Act. To hold otherwise would defeat our goal of giving effect to the legislature's intent. *Davis,* 2003–NMSC–022, ¶ 6, 134 N.M. 172, 74 P.3d 1064.

■ {25} We are not aware of the legislature's reasoning in choosing to exclude judges from the Governmental Conduct Act. Some may find it difficult to see why the legislature chose to do so. However, unless unconstitutional, it is not the role of this Court to question the wisdom, policy or justness of legislation enacted by our legislature. *U.S. Xpress, Inc.,* 2006–NMSC–017, ¶ 11, 139 N.M. 589, 136 P.3d 999. In *Cleve,* we emphasized that

[a] policy decision of this nature should not be second-guessed by the judiciary. The decision to extend the scope of an existing statute to reflect changing values is a matter for the Legislature, and . . . we presume that the Legislature continues to intend that the statute apply according to its original meaning.

1999–NMSC–017, ¶ 15, 127 N.M. 240, 980 P.2d 23. If the failure to include judges in Section 10–16–3(D) indeed resulted from a legislative oversight, then it is the legislature, not this Court, that should correct this mistake. *See Espinosa,* 2003–NMSC–017, ¶ 31, 134 N.M. 59, 73 P.3d 197.

■ {26} In light of the legislature's decision to exclude judges from prosecution under the Governmental Conduct Act, we are compelled to overturn Defendant's convictions. Although the crime of official acts prohibited exists with respect to some classes of defendants, it is nonexistent with respect to judges. We hold that just as a conviction for a nonexistent crime constitutes fundamental error, a conviction for a crime that does not exist as to a particular defendant is also fundamental error. *See Johnson,* 103 N.M. at 371, 707 P.2d at 1181 (holding that a conviction for a nonexistent crime constitutes fundamental error). Therefore, we conclude that it was fundamental error to convict Defendant of official acts prohibited under the

Governmental Conduct Act due to the legislature's express exclusion of judges.

## IV. CONCLUSION

{27} We hold that Defendant's five convictions for official acts prohibited must be reversed due to fundamental error. As a result, Defendant's five convictions for criminal sexual penetration committed during the commission of official acts prohibited must also be reversed.

{28} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, and PETRA JIMENEZ MAES, Justices.